**STATE of Minnesota, Respondent,**

v.

**Gregory Lee BICKHAM, Appellant.**

**No. CX–91–325.**

Supreme Court of Minnesota.

June 5, 1992.

John Stuart, State Public Defender, Lawrence W. Pry, Asst. Public Defender, St. Paul, for appellant.

Michael O. Freeman, Hennepin County Atty., Lee W. Barry, III, Asst. Hennepin County Atty., Minneapolis, and Hubert H. Humphrey, III, Atty. Gen., St. Paul, for respondent.

TOMLJANOVICH, Justice.

Appellant Gregory Lee Bickham was convicted of first degree felony murder for the killing of Wallace Handwerk while committing an aggravated robbery. On direct appeal to this court, appellant raises two issues: (1) Whether the trial court abused its discretion in refusing to grant appellant's motion for a mistrial when a medical examiner characterized the gunshot wound inflicted by appellant as an "execution style gunshot wound"; and (2) Whether the evidence was insufficient to support the verdict of first degree felony murder. We affirm.

Appellant shot and killed Wallace Handwerk while robbing him of $25,000 outside the University Health Care Center on May 11, 1990. Appellant conceded that he intended to commit an aggravated robbery against Handwerk and that he shot Handwerk in the head. Appellant, however, argued that the gun went off accidentally and, thus, he did not intend to kill Handwerk. The state argued that the shooting was either premeditated first degree murder or, alternatively, first degree felony murder. The jury convicted the appellant of first degree felony murder in violation of Minn.Stat. § 609.185(3).[1]

The victim, Wallace Handwerk, owned and operated a mobile check cashing business called Money Men, Inc. Money Men would go to local businesses and cash payroll checks, write money orders and occasionally cash individual checks for a small fee. Each Money Men courier wore a uniform and carried a gun. A courier also carried a briefcase which contained a metal cash box, a weapons permit, and a check protector for money orders. Appellant states that an acquaintance, Mustafa Shabazzi, came up with the idea to rob Handwerk. Shabazzi claimed to have robbed Handwerk before and said that it would be easy. Appellant and Shabazzi conspired to rob Handwerk at the University Health Care Center (UHCC), where one of Shabazzi's friends worked. Appellant was to carry out the robbery while Shabazzi was to drive the getaway car.

On May 11, 1990, appellant sat on a ledge near the entrance of the UHCC reading a newspaper while he waited for Handwerk to arrive. It was a clear, sunny day. Handwerk started the day with more than $38,000 in cash in his briefcase. By the time Handwerk arrived at the UHCC around 11:30 a.m., he was carrying $25,000 in cash. Appellant testified that as Handwerk approached the entrance of the building, he jumped off the ledge and yelled to Handwerk, "This is a stickup." When Handwerk did not stop, appellant followed Handwerk and told him, "I'm not kidding." At this point, appellant testified the gun went off and Handwerk fell. Appellant grabbed the briefcase and ran to the car where Shabazzi was waiting.

Two eyewitnesses testified that appellant intentionally shot Handwerk. The first eyewitness was in the lobby of the UHCC and had a clear view of the entrance of the building when she witnessed the shooting. She testified that Handwerk approached the entrance with a briefcase in one hand and a check writing machine in the other. She testified that as Handwerk was about to enter the front door, he was approached from the rear by appellant, whom she earlier had observed sitting on a ledge reading a newspaper. The eyewitness testified that appellant said something to Handwerk, who shook his head no and waived his hand at appellant. She stated that as Handwerk grabbed for the door with his right hand, the defendant stepped behind him and grabbed Handwerk's upper forearm, shoved him in the shoulder area, put an automatic pistol to the back of Handwerk's head and shot him. The witness testified further that as Handwerk fell, appellant reached over, grabbed the briefcase, "scanned the door with his gun," then fled the scene.

The second eyewitness, a receptionist at the UHCC, corroborated the story. She was seated behind the reception desk and

1. Minn.Stat. § 609.185(3) provides that whoever "causes the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit * * * aggravated robbery" is guilty of murder in the first degree.

also had a clear view of the entrance to the building. She testified she saw Handwerk approach the entrance. She testified that as Handwerk reached for the door opener, appellant approached from the rear, shoved and pushed him against the door, put the gun to Handwerk's head and shot him. Both witnesses identified appellant from a photo spread.

After the shooting, Shabazzi and appellant fled the scene and went to a friend's apartment. There, Shabazzi counted the money and appellant was given $6,000 for his part in the robbery. Shortly thereafter, Shabazzi and appellant purchased a Cadillac for appellant with the money they had stolen. Later that afternoon, appellant took his girlfriend and her kids shopping and spent more than $200 of the stolen money on clothes.

On June 8, 1990, appellant was arrested in Illinois on a Minnesota warrant in connection with this case. At trial, appellant admitted to committing an aggravated robbery against Handwerk and that he shot Handwerk in the head. Appellant argued that he did not intend to kill Handwerk. The state called Dr. Karen Kelly, a medical examiner at the Hennepin County Medical Center, as an expert. Dr. Kelly testified that based on the powder fragments and the charring of the skin from the gunshot wound, the gun was four to six inches from the back of Handwerk's head when it was discharged. She testified that the cause of death resulted from the gunshot wound to the head. In response to questioning by the state, Dr. Kelly characterized the gunshot wound as an "execution style gunshot wound." Defense counsel immediately objected and moved for a mistrial. The trial court ruled that the characterization of the wound as "execution style" was improper and inadmissible. The trial court refused appellant's motion for a mistrial but gave a curative instruction to the jury. The trial court instructed the jury on first degree premeditated murder, first degree felony murder and the lesser included offenses of second degree intentional murder and second degree felony murder. The jury convicted appellant of first degree felony murder. This appeal followed.

The first issue for our consideration is whether the trial court abused its discretion in refusing to order a mistrial based on the medical examiner's comments. Dr. Kelly testified about her findings concerning the gunshot wound to Handwerk's head. The relevant exchange between the state and Dr. Kelly went as follows:

Q: Now, Doctor, in your—have you studied or, as part of your training and experience, or have you seen this type of physical injury before this in your work?

A: Yes, I have.

Q: And in what types of cases have you seen this type of injury?

A: We have often seen these cases in, they are found often, again, these gunshot wounds that are found in the head area that are inflicted by a perpetrator, often when they are found in the left temporal region or again behind the right ear, we call those an execution style gunshot wound.

Appellant argues that the medical examiner, by characterizing the wound as an "execution style gunshot wound," was improperly giving her opinion regarding appellant's intent.

The trial court remedied any potential prejudice by giving a curative instruction to the jury, telling them to disregard the medical expert's characterization of the wound as "execution style." It is also significant that the state introduced overwhelming evidence of intent in the form of two eyewitnesses. We hold, therefore, that the trial court was within its discretion in refusing to grant appellant's motion for a mistrial.

We turn next to appellant's claim that there was insufficient evidence to support the jury verdict of first degree felony murder.

The standard of review of a jury conviction in an insufficiency-of-evidence appeal is whether, viewing the evidence and any reasonable inferences that could be drawn therefrom in a light most favorable to the state, the jury could reason-

**926**

ably find the defendant guilty beyond a reasonable doubt. In conducting this review, the court assumes the jury believed the state's witnesses and disbelieved evidence to the contrary. The jury determines the credibility and weight to be given the testimony of witnesses.

A conviction based on circumstantial evidence merits stricter scrutiny. The evidence is entitled to the same weight as any evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt.

*State v. DeWald,* 463 N.W.2d 741, 748 (Minn.1990) (citations omitted).

The state produced numerous witnesses and substantial evidence connecting appellant to the crime and establishing intent. Appellant, himself, concedes he committed an aggravated robbery against Handwerk. Appellant also concedes that he shot Handwerk while committing the robbery. Appellant, nevertheless, maintains the shooting was an accident and the evidence was insufficient for the jury to conclude otherwise. "Intent is an inference drawn by the jury from the totality of circumstances. The [appellant's] statements as to his intentions are not binding on the jury if [appellant's] acts demonstrate a contrary intent." *State v. Raymond,* 440 N.W.2d 425, 426 (Minn.1989) (citations omitted).

Appellant argues that the only evidence of his culpable intent was that he was armed with a pistol when he accosted Handwerk and that he shot Handwerk at close range. This evidence alone would be sufficient for the jury verdict in this case. *See State v. Campbell,* 281 Minn. 1, 13, 161 N.W.2d 47, 55 (1968) (one who obtains a loaded handgun for the purpose of carrying out a robbery raises a permissible inference of intent to kill); *State v. Harris,* 405 N.W.2d 224, 229 (Minn.1987) (intent may be inferred from the way victim was shot). In addition, appellant planned the robbery. He carried a loaded gun and waited patiently for Handwerk to arrive. Most importantly, one must take into consideration the testimony of the two eyewitnesses. Both women had a clear view of the shooting. Both women saw the appellant shove Handwerk from behind, put the pistol to Handwerk's head and pull the trigger. There was no evidence that Handwerk resisted or struggled in any way.

Although the jury could have believed appellant's version of the shooting, they did not. The jury "normally is in the best position to evaluate circumstantial evidence, and [ ] their verdict is entitled to due deference." *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). The jury determines the weight and credibility to be accorded the testimony of each witness. *State v. Bias,* 419 N.W.2d 480, 484 (Minn.1988). The jury obviously believed the state's witnesses and not the appellant. There is no evidence other than appellant's testimony indicating he did not intend to kill Handwerk. Based upon our review of the record, we hold that the evidence was sufficient to support the conviction.

Affirmed.