**STATE of Minnesota, Respondent,**

v.

**John Robert CHAMBERS,
Petitioner, Appellant.**

No. C3–92–2279.

Supreme Court of Minnesota.

Oct. 29, 1993.

Lawrence W. Pry, Asst. State Public Defender, St. Paul, for appellant.

Robert A. Stanich, St. Paul, for respondent.

PAGE, Justice.

In an unpublished decision, the court of appeals affirmed defendant's conviction of second-degree intentional murder against a claim that the trial court erred in admitting expert opinion testimony by the pathologist that the killing was intentional. The court of appeals held that the trial court did not err in admitting this evidence. Although we agree with the court of appeals' ultimate decision to affirm defendant's conviction, we granted review for the purpose of making clear our opinion that the trial court erred in admitting the evidence.

This case arises from the stabbing death of James Nelson at a party in Crookston. A fight erupted between defendant and Nelson. At some point during the fight, which did not last long, Nelson grabbed his own throat and fell to the floor. Defendant left the house briefly but returned before the police arrived. It was the state's theory at trial that defendant stabbed Nelson with a folding knife, then disposed of it. The knife was found in the next door neighbor's yard three months later. No witness at trial testified to actually seeing defendant stab Nelson. However, one witness claimed to have seen defendant with a weapon and other witnesses testified that they saw defendant make a back and forth slashing motion with his hand. Moreover, most of the witnesses testified that no one else could have caused Nelson's injuries.

A pathologist from Ramsey County testified that Nelson bled to death after being stabbed eight times. The fatal wound was an elongated incision neck wound nine centimeters long and two centimeters deep that severed the left subclavian and jugular veins. The pathologist testified that the folding knife could have caused Nelson's death. When the prosecutor asked the pathologist, "Doctor, as a result of your examination * * * do you have an opinion as to the intent of the person" who inflicted the wounds, defense counsel objected. The trial court overruled the objection, and the witness testified that to a "reasonable medical certainty" he believed the wounds "were meant to cause the subject's death."

Defendant did not testify. The main argument of the defense was not that the killing was unintentional but that the fatal wound was caused as defendant's sister swung a broken bottle at Nelson.

■ Given the number and nature of the wounds, the jury readily could have found that whoever inflicted the wounds did so with an intent to kill. Thus, we do not think the admission of the pathologist's opinion testimony prejudiced defendant, particularly given the nature of defendant's defense. However, as we said at the outset, we disagree with the opinion of the court of appeals that it was proper for the pathologist to give an expert opinion on the defendant's state of mind or intent.

It is true that Minn.R.Evid. 704 provides that testimony in the form of an opinion otherwise admissible "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The commentary to the rule provides, however, in relevant part, that in determining whether or not an opinion will assist the jury the court should make a distinction "between opinions as to factual matters, and opinions involving a legal analysis or mixed questions of law and fact." As the Comment states, "[o]pinions of the latter nature are not deemed to be of any use to the trier of fact."

We recently reemphasized this point in *State v. Provost*, 490 N.W.2d 93 (Minn.1992), upholding the exclusion of expert opinion testimony presented by the defense on the question of whether, objectively, the defendant premeditated and intended the death of the victim. The court of appeals in the instant case concluded that *Provost* is distinguishable because the expert here is a pa-

thologist, not a psychiatrist. We believe that this distinction should not make for a different result.

■ The testimony in this case related to whether the defendant had the requisite mens rea, which is a mixed question of law and fact. With reference to such opinion testimony, we said in *Provost:*

> [P]sychiatric opinion testimony [is not] admissible on the ultimate question of whether in fact the defendant had the requisite mens rea when he committed the crime. Because mens rea is a legal construct, a medical opinion is being improperly elicited on a mixed question of law and fact. We do not, for example, allow expert opinion testimony on the ultimate question of whether a rape victim had rape trauma syndrome, *State v. Saldana,* 324 N.W.2d 227 (Minn.1982), nor on whether a battered woman in fact suffered from the battered woman syndrome, *State v. Hennum,* 441 N.W.2d 793, 799–80 (Minn.1989). Equally important, any probative value of such opinion testimony is substantially outweighed by the confusion and prejudice engendered by the "semantic jousting" of the experts. * * *
>
> In our view, psychiatric opinion testimony is not helpful on whether a person capable of forming a specific intent did in fact formulate that intent. Though a subjective state of mind may at times be difficult to determine, there is no mystery to mens rea, the latinism notwithstanding. Jurors in their every day lives constantly make judgments on whether the conduct of others was intentional or accidental, premeditated or not. Thus, to do something intentionally is to do it with the purpose of accomplishing that something. Minn.Stat. § 609.02, subd. 9 (1990). To set a person on fire with the purpose of ending that person's life is to torch with intent to kill. The psychiatrist may look at what the defendant said and did to give an opinion whether the torching was done with intent to kill or to hurt, but the factfinder can do this too; indeed, it is the factfinder's job to do it, not the expert's as a thirteenth juror.

490 N.W.2d at 101–02.

■ This reasoning also applies to an opinion on the defendant's mens rea by a pathologist. A pathologist may appropriately testify to things such as the number and extent of the wounds, the amount of bleeding, whether the wounds were caused by a knife or a blunt instrument, whether a gunshot wound is a contact wound, whether the wounds could or could not have been the result of accident, the cause of death, and so forth, but the pathologist should not be allowed to make an "expert inference" of intent to kill from these matters. That is for the jury to do.

In summary, we hold that the trial court erred in allowing the pathologist to give an expert opinion that the killing was intentional, but we also hold that the error was not prejudicial. *State v. Bickham,* 485 N.W.2d 923, 925 (Minn.1992) (holding that admission of testimony by pathologist that gunshot wound was "execution style gun shot wound" in trial of defendant charged with first-degree intentional felony murder did not prejudice the defendant).

Affirmed.