*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0344**

State of Minnesota,
Respondent,

vs.

Kurt Nathan Rud,
Appellant.

**Filed March 21, 2016
Affirmed
Connolly, Judge**

Beltrami County District Court
File No. 04-CR-13-1576

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Annie Claesson-Huseby, Beltrami County Attorney, David P. Frank, Assistant County Attorney, Bemidji, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, David W. Merchant, Assistant Public Defender, St. Paul, Minnesota (for appellant)


Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges his conviction of first-degree driving while impaired, arguing that the district court erred by admitting testimony that it was unsafe for appellant to operate a vehicle from the doctor who treated appellant after his arrest and that appellant's consent to the drawing of his blood was not voluntary. Because we see no error in the admission of the testimony and the totality of the circumstances indicates that appellant's consent was voluntary, we affirm.

## FACTS

On November 29, 2012, appellant Kurt Rud was arrested by an officer who saw him driving east in a westbound lane. The arresting officer reported that: (1) because appellant's face was injured, the officer transported him to an emergency room so he could receive medical care; (2) appellant met with a doctor and completed all tests that the doctor requested; (3) the officer then read appellant his Miranda warning, which appellant stated he understood; (4) appellant requested an attorney when asked; (5) appellant was given a phone and contacted an attorney who happened to be in the hospital; (6) appellant met with that attorney; (7) appellant replied "yes" when an officer asked him if he was willing to give a blood test; and (8) appellant's blood was drawn. His blood alcohol concentration was determined to be .16. Because appellant had a felony DUI within the last ten years, he was charged with felony DUI and felony operation of a motor vehicle while impaired with an alcohol concentration of .08 or more within two hours of driving.

Appellant moved to suppress the results of his blood test; following a hearing, his motion was denied. He pleaded not guilty and, at trial, testified that he had been assaulted immediately prior to his arrest and asserted the defenses of duress and necessity. To support these defenses, he called the doctor who treated him after his arrest as a witness to testify as to appellant's medical condition at the time he drove and was arrested.

On cross-examination, the prosecutor asked the doctor if he considered the transportation circumstances of emergency-room patients and if he needed to advise patients leaving the emergency room as to whether they could drive; the doctor answered both questions affirmatively. The prosecutor then asked the doctor if he believed, based on his treatment of appellant in the emergency room, that it would have been safe for appellant to drive "taking into account his level of inebriation and his injury." The doctor answered, "No, I [did] not think it would be safe."

The jury found appellant guilty on both counts. He challenges his convictions, arguing that the district court erred in admitting the doctor's testimony that it would not have been safe for appellant to drive and that the results of his blood test should have been suppressed because his consent to the test was not voluntary.

**D E C I S I O N**

**1.    Admission of the doctor's testimony**

Appellant argues that the admission of the doctor's testimony was plain error.[1] "The plain error standard requires that the defendant show: (1) error; (2) that was plain; and

---

[1] Appellant states that he "did not object to all of the [s]tate's questions or the testimony [the doctor] provided in response" and agrees with the state that the appropriate standard

3

(3) that affected substantial rights.  If those three prongs are met, we may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002) (citations and quotation marks omitted).  "The admission of expert testimony is within the broad discretion accorded [to] a [district] court, and rulings regarding materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence may be reversed only if the [district] court clearly abused its discretion." *State v. Ritt*, 599 N.W.2d 802, 810 (Minn. 1999) (quotation and citations omitted).  This court will not reverse a decision on the admission of expert testimony absent an apparent error.  *State v. Grecinger*, 569 N.W.2d 189, 194 (Minn. 1997).  To be admissible, expert testimony must be both relevant and helpful to the jury; its probative value must outweigh its prejudicial effect.  *Id.* at 193.

Appellant claims that the doctor's testimony should not have been admitted because the jurors did not need help to understand that it would not be safe for a person under the influence of alcohol to drive.  But the jury was instructed:

> [Appellant] is not guilty of any crime if [his] actions were necessary because of an emergency situation.  This defense applies only in emergency situations where the peril is instant, overwhelming and leaves no alternative but the conduct in question.  [Appellant] has the burden of proving this defense by the greater weight of the evidence.  This means that [he] must prove that it is more likely true than not true that [he] acted out of necessity because of an emergency situation.

---

of review is plain error.  *See* Minn. R. Crim. P. 31.02; *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).

4

Thus, the jury needed to decide whether appellant's driving under the influence occurred because he had no alternative, i.e., because he had to escape from his assailant or obtain medical attention.

The doctor testified as to appellant's medical condition soon after his arrest, when he was examined in the emergency room. He testified that, while appellant did not require hospitalization, it was not safe for him to drive. The doctor did not testify whether it was necessary or unnecessary for appellant to drive while impaired, and that was the question the jury needed to answer.

Moreover, even if the doctor had testified as to his opinion on that point,

> testimony in the form of an opinion otherwise admissible "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The commentary to the rule provides . . . that in determining whether or not an opinion will assist the jury the court should make a decision "between opinions as to factual matters, and opinions involving a legal analysis or mixed questions of law and fact . . . . Opinions of the latter nature are not deemed to be of any use to the trier of fact."

*State v. Chambers*, 507 N.W.2d 237, 238 (Minn. 1993) (quoting Minn. R. Evid. 704 and its comment). The doctor's opinion that appellant's condition was such that it would not have been safe for him to drive did not involve legal analysis: it was a medical question that the doctor addressed for any emergency-room patient who planned to drive after leaving the hospital.

Finally, even if the admission of the doctor's testimony were plain error, that error did not affect appellant's substantial rights. *See Strommen*, 648 N.W.2d at 686. A defendant's substantial rights are affected if there is a reasonable likelihood that the error

had a significant effect on the jury's verdict, and the court may consider the amount of other evidence presented at the trial. *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001). Here, the officer who found appellant driving the wrong way on the highway, the doctor who treated appellant, and the friends from whose house appellant drove away while under the influence of alcohol all testified, and their testimony supported the jury's verdict. Appellant's substantial rights were not affected by the doctor's testimony.

The admission of the expert the testimony was not plain error.

**2.     Voluntary consent**

Appellant does not dispute that he was read the implied consent advisory, spoke to an attorney, and consented to a blood test. He argues, however, that the totality-of-the-circumstances analysis prescribed in *State v. Brooks*, 838 N.W.2d 563, 568-69 (Minn. 2013) indicates that his consent was involuntary. The totality-of-the-circumstances analysis involves the nature of the encounter, including what was said and how it was said, and the kind of person the defendant is. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011); *see also Brooks*, 838 N.W.2d at 569-72.

Appellant argues first that the district court did not consider the kind of person he is, specifically that his "physical condition at the time of the blood draw mitigate[d] against a finding of voluntariness" because "[h]e was overwhelmed by his medical condition". But the doctor who examined appellant found he was alert, and the fact that appellant "appear[ed] confused and uncertain about the entire encounter" on the tape of the advisory is consistent with his inebriated condition.

6

Appellant also argues that "the plain language of the advisory" that was read to him "does not . . . support a finding of voluntariness" because "the advisory did not expressly state that [appellant] 'can say no to the search'" and the advisory includes "an oblique reference to a 'decision'" when it states that there is a right to consult an attorney "before making your decision." But the advisory clearly expresses that the test may be refused by stating that "[r]efusal to take a test is a crime." Thus, appellant was told implicitly that he could say "no" to the test and explicitly what the consequence of saying "no" would be.

Appellant goes on to argue that "using the advisory to support a voluntariness finding should be impermissible if the advisory itself is premised on a criminal test refusal statute that is unconstitutional." Appellant acknowledges that the constitutionality of Minnesota's advisory has been upheld in *State v. Bernard*, 859 N.W.2d 762, 768 n.6 (Minn. 2015) (holding that the advisory is constitutional in the context of warrantless breath tests but explicitly declining to address its constitutionality in the context of blood or urine tests), *cert. granted*, 83 U.S.L.W. 3916 (U.S. Dec. 11, 2015) (No. 14-1470). Appellant distinguishes *Bernard* because it involved a breath test and argues that "the test refusal statute in the context of [his] case is unconstitutional because it involves a search of his blood."

But the argument that the advisory is unconstitutional in the context of blood and urine tests was addressed and rejected in *Brooks*, 838 N.W.2d at 573. Appellant attempts to distinguish *Brooks* because it concluded that a driver's consulting with an attorney before consenting to the test indicated the driver's consent was voluntary. Appellant argues that the attorney he consulted should have told him, but did not tell him, that, in the context

7

of blood tests, the advisory "very well might be unconstitutional and, as a result, [appellant] could lawfully refuse to submit to the blood test." But this advice would have been a misstatement of the law as it stood when the attorney advised appellant.

Finally, appellant argues that, unlike the defendant in *Brooks*, whose "will had [not] been overborne and [whose] capacity for self-determination [had not been] critically impaired," *id*., the assault that occurred prior to appellant's arrest did impair his capacity for self-determination. But appellant takes this language from *Brooks* out of context: it referred to whether a defendant had been "confronted with repeated police questioning" and "asked to consent after having spent days in custody." *Id*. There is no indication that appellant's treatment by the police differed in any significant way from the way the police treated Brooks.

The district court did not err in concluding that appellant voluntarily consented to the blood test or that the doctor's testimony was admissible.

**Affirmed.**