**STATE of Minnesota, Respondent,**

v.

**Phoeuy CHUON, Appellant.**

**No. C7–98–1861.**

Court of Appeals of Minnesota.

June 29, 1999.

Review Denied Aug. 25, 1999.

Mike Hatch, Attorney General, St. Paul; and Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant County Attorney, St. Paul, for respondent.

John M. Stuart, State Public Defender, Mark F. Anderson, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by AMUNDSON, Presiding Judge, SCHUMACHER, Judge, and HALBROOKS, Judge.

## OPINION

SCHUMACHER, Judge.

This appeal is from a judgment of conviction for attempted first-degree murder.

Minn.Stat. §§ 609.17, .185(1) (1996). Appellant Phouey Chuon was sentenced to 186 months in prison. Because we conclude that the trial court did not abuse its discretion in admitting gang evidence and that the evidence is sufficient to support the conviction, we affirm.

## FACTS

Chuon was charged with attempted first- and second-degree murder, drive-by shooting, and "crime committed for the benefit of a gang." The charges arose from the shooting of Monivorn Kim at a gas station in St. Paul. Kim, a 16–year–old member of the Asian Boyz gang, was shot after Kim's companion and fellow gang member had "challenged" a man they suspected of being a member of a rival gang, the Red Cambodian Bloods (RCB).

Kim testified that he and his friends were at the station pumping gas when they saw a man in a red flannel shirt talking on the phone. One of the group went over to him to ask if he was in a gang, which he denied. The man then got into a red or maroon Honda Accord and drove off. Shortly after, the car returned and Kim saw the man in the red flannel shirt sitting in the passenger seat pointing a gun at them. Kim and three other eyewitnesses identified Chuon as the man with the gun. The man fired a single shot, striking Kim in the shoulder.

The state presented the testimony of Officer Straka, a Minneapolis police officer who was assigned to the Gang Strike Force and was familiar with Asian gangs. Straka estimated there were about 50 members of the RCB in the Twin Cities and began naming them. When Straka named the first suspected member, defense counsel objected on grounds of relevance. The trial court overruled the objection. Straka then gave his expert opinion that one of the primary objectives of the RCB was the commission of violent crimes. In support of that opinion, Straka cited arrests made and charges filed against RCB members for attempted murder, aggravated robbery, and carrying a gun without a permit. Straka then gave his expert opinion that the shooting of Kim was committed to benefit the RCB by upholding their honor against the "challenge" made at the gas station.

Chuon testified that he had quit the gang several years earlier. He denied shooting Kim. The jury, however, found Chuon guilty on all four counts, including crime committed for the benefit of a gang.

## ISSUE

1. Did the trial court abuse its discretion in admitting evidence of criminal activity by other gang members?

2. Is the evidence sufficient to support the conviction?

## ANALYSIS

1. Chuon argues that the trial court abused its discretion in admitting evidence that other members of the RCB had been arrested for, or charged with, criminal acts. The trial court has broad discretion in ruling on the admissibility of evidence, and its ruling will not be reversed absent a clear abuse of discretion. *State v. Kelly*, 435 N.W.2d 807, 813 (Minn. 1989).

In order to prove that Chuon committed a crime for the benefit of a gang the state had to show that the crime benefited a gang, defined as a group that

> (1) has, as one of its primary activities, the commission of one or more of the offenses listed in section 609.11, subdivision 9;

> (2) has a common name or common identifying sign or symbol; and

> (3) includes members who individually or collectively engage in or have engaged in a pattern of criminal activity.

Minn.Stat. § 609.229, subd. 1 (1998). To prove the first and third parts of this definition, the state had to introduce some evidence of criminal activity committed by RCB members.

■ Chuon suggests that Minn.Stat. § 609.229 does not define a separate crime but merely creates a sentence enhancement factor. He provides no legal authority for this claim. The statute itself states that a person. "who commits a crime for the benefit of * * * a criminal gang * * * is guilty of a crime." Minn. Stat. § 609.229, subd. 2 (1998). The sentencing guidelines formerly included an aggravating factor for commission of crimes to benefit a gang. *See* Minn. Sent. Guidelines II.D.2.b.(7) (1990) (providing aggravating factor for crime committed "in furtherance of criminal activity by an organized gang"). But this provision was deleted after the legislature enacted Minn. Stat. § 609.229. *See* 1991 Minn. Laws ch. 279, § 30 (enacting Minn.Stat. § 609.229); Minn. Sent. Guidelines II.D.2.b (1992) (deleting reference to crime committed "in furtherance of criminal activity by an organized gang" as an aggravating factor). Moreover, the guidelines specify that the related aggravating factor of a "group" crime may not be used in sentencing a crime committed for the benefit of a gang under Minn.Stat. § 609.229. Minn. Sent. Guidelines cmt. II.D.205.

In sum, the changes in the guidelines reinforce the unambiguous language of section 609.229 making a crime committed for the benefit of a gang a substantive offense, not a sentence enhancement factor. Moreover, the guidelines establish a presumptive sentence for the offense, which would be absurd if the statute merely defined a sentence enhancement factor. Minn. Sent. Guidelines II.G.

■ Thus, we conclude that Minn.Stat. § 609.229 defines a substantive offense. This means that evidence of the prior criminal activity of members of the gang is necessary to prove an element of the state's case. *See* Minn.Stat. § 609.229, subd. 1(1) (requiring that a primary activity of gang be the commission of designated offenses), (3) (requiring that gang include members who have engaged in pattern of criminal activity).

■ Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Minn. R. Evid. 403. But this type of gang evidence is not only probative, it is essential to establish an element of the state's case under Minn.Stat. § 609.229, subd. 1. The prejudice to Chuon therefore, even if "unfair" prejudice, is far outweighed by the probative value of the evidence. *Cf. State v. Carlson,* 268 N.W.2d 553, 559 (Minn.1978) (holding that evidence of motorcycle club insignia, relevant only to defendant's state of mind in prosecution for obstructing arrest, was too prejudicial to be admissible).

It is unnecessary in this case to consider whether there is a limit to the gang crime evidence admissible to prove a violation of Minn.Stat. § 609.229. Defense counsel, after making a single relevancy objection to the *naming* of other RCB gang members, did not object when Straka testified about the arrests and charges implicating other RCB members in criminal activity. There was an unrecorded bench conference following defense counsel's objection, at which defense counsel may have argued against the admission of this evidence of other criminal activity. But there was no objection to the amount of gang crime evidence the state presented, which was limited to the activities of three gang members in any event. *See State v. Peterson,* 533 N.W.2d 87, 91 (Minn.App.1995) (stating general rule that failure to object waives issue on appeal). Chuon also failed to object that the state's evidence consisted of arrests and charges rather than convictions.

■ 2. Chuon argues that the evidence is insufficient to support the conviction because it does not establish an intent to kill. In reviewing a claim of insufficient evidence, this court must view the evidence in the light most favorable to the verdict, assuming the jury believed the state's witnesses and disbelieved any contrary evidence, in order to determine whether

there is sufficient evidence to allow the jury to reach the verdict that it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989); *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989).

■ Chuon points to cases in which the number of shots, or blows, has been held to support an inference of intent to kill. *See, e.g., State v. Bock*, 490 N.W.2d 116, 120 (Minn.App.1992) (holding that two separate severe blows to head proved intent to kill), *review denied* (Minn. Aug. 27, 1992). He concedes that a single shot may be sufficient to support the same inference. *See State v. Harris*, 405 N.W.2d 224, 229 (Minn.1987) (firing of sawed-off shotgun at victim's head from less than six feet sufficient evidence to prove intent to kill). But he argues that under the circumstances of this case, in which a single shot was fired from a moving car, for the sole purpose of retaliating for a challenge against a gang, there is insufficient evidence of intent. We do not agree that a single shot is insufficient in this case to prove an intent to kill.

Intent must generally be proved by inferences from the defendant's conduct and the surrounding circumstances. *State v. Whisonant*, 331 N.W.2d 766, 768 (Minn. 1983). Chuon fired at Kim, striking him in the shoulder blade, from a distance of about six to eight feet. The supreme court in *Whisonant* held the evidence of intent to kill was sufficient where the defendant fired a single bullet from a "pen gun" at a police officer 12 feet away, even though the officer was struck only by "particles from the discharge." *Id.* Chuon's single shot to the victim's torso, an area of the body containing vital organs, is sufficient to support a finding of intent to kill. We conclude that the evidence is sufficient to support the conviction.

## DECISION

The trial court did not abuse its discretion in allowing the state to introduce evidence of alleged crimes committed by other gang members in order to prove one element of the offense of "crime committed for the benefit of a gang." The evidence is sufficient to prove intent to kill.

**Affirmed.**