STATE of Minnesota, Respondent,

v.

Richard James CARILLO, Appellant.

No. C5–00–595.

Court of Appeals of Minnesota.

April 3, 2001.

**924**

Mike Hatch, Attorney General, Robert A. Stanich, Assistant Attorney General, St. Paul, MN; and Lisa N. Borgen, Clay County Attorney, Moorhead, MN, (for respondent).

Melissa Sheridan, Bradford Colbert, Assistant State Public Defenders, St. Paul, MN, (for appellant).

Considered and decided by KALITOWSKI, Presiding Judge, SCHUMACHER, Judge, and STONEBURNER, Judge.

## OPINION

SCHUMACHER, Judge.

Appellant Richard James Carillo was charged with drive-by shooting, drive-by shooting committed for the benefit of a gang, and unlawful possession of a firearm. The jury found Carillo guilty on all three counts. We affirm.

## FACTS

The charges in this criminal case stem from the events occurring during the evening hours of August 23, 1999 in Romkey Park in Moorhead. Many witnesses testified at trial, including Rebekah Miller and Laura Zachariason. The testimony of Miller and Zachariason was similar in almost every respect.

Miller testified that on the date in question, she had driven her car, a silver Oldsmobile, to pick up Carillo, then Zachariason, and finally Scott Matelski. After picking up Matelski, Carillo began driving Miller's car. He drove the car to Romkey Park, where an unidentified individual or individuals directed slurs toward Carillo, calling him a "faggot" and a "bitch."

Angered, Carillo drove the car out of town. Having driven on a gravel road for a time, he pulled over and produced a hand gun. After loading the gun, Carillo and Matelski began shooting the gun at various targets. When the two had finished shooting, the group of four headed back into the city. Carillo spotted an unidentified man and spoke to him for a moment. Miller overheard parts of the conversation and testified that the two discussed "Villa Lobos." Miller also noted that Carillo showed the hand gun to the man.

Carillo then drove the car back to Romkey Park. An unidentified person in the park threw an object into Miller's car, striking Matelski. Matelski became upset and exited the vehicle. Carillo drew the hand gun, reached across Miller's face, and fired two or three times out the window into Romkey Park. Carillo then exited the vehicle and fired again, once toward Romkey Park and once toward the rear of the car where Matelski had just exited. Carillo and Matelski then got back in the car, Carillo drove away and stated, among other things, "Villa Lobos for life."

In addition to the testimony of Miller and Zachariason, the state called Robert Bodin, who had been sitting by a window in his apartment near Romkey Park at the time of the incident. Bodin testified that after hearing the shots, he instructed his wife to call the police. When the police arrived at the scene, Bodin told an officer that the shooter was one of four people, all of whom had been riding in a silver Oldsmobile. A police officer showed a photo lineup to Bodin. Bodin picked Carillo from the photo lineup, although at the time he was not absolutely sure that Carillo was the shooter.

The state presented evidence claiming that it showed that the Villa Lobos is a criminal gang and that Carillo belongs to the Villa Lobos and committed the shooting for the benefit of the gang. The state offered photographs seized from Matelski's apartment depicting Carillo and other persons exhibiting gang colors and symbolism. Lieutenant Jerome Thorsen, a deputy with the Clay County Sheriff's Department assigned to the Minnesota Gang Strike Force, testified that Carillo met many of the criteria typically used by the police to infer affiliation with a criminal gang. Thorsen testified that he is familiar with the criminal activities of the Villa Lobos gang and has arrested several of its members. He stated that members of the Villa Lobos engage in various criminal activities. Based on the information available to him, Thorsen gave his opinion that the Villa Lobos is a criminal gang.

In his defense, Carillo called several witnesses. His sister, Sylvia Carillo, his aunt, Cynthia Carillo, and two friends all testified that Carillo had not been a member of a gang for at least two years, although all but his aunt acknowledged that he had been a member of a gang prior to that time. Vanessa Van, Carillo's girlfriend, would have testified that Miller had approached Van and told her that in exchange for money Miller might be willing to change her testimony. On objection, the trial court excluded this testimony on the ground that it was hearsay.

## ISSUES

1. Did the trial court err in permitting the police officer to testify as to the criminal activities of the Villa Lobos and as to his opinion that the Villa Lobos organization constitutes a criminal gang?

2. Did the trial court err in excluding out-of-court statements which would have been used to impeach a witness for the prosecution?

3. Was the evidence sufficient to support the conviction for a violation of Minn. Stat. § 609.229, subd. 2 (1998)?

## ANALYSIS

■ 1. Carillo contends that Thorsen should not have been permitted to testify as to whether the Villa Lobos constitutes a criminal gang. Carillo contends that the state must instead introduce evidence that members of the Villa Lobos have committed various crimes and leave for the jury the determination as to whether this amounts to a criminal gang. We disagree.

■ Minn.R.Evid. 702 states as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Accordingly, the primary criterion for admissibility is whether the opinion testimony will be helpful to the trier of fact—that is, whether the testimony will assist the jury in resolving factual questions presented. *State v. Grecinger*, 569 N.W.2d 189, 195 (Minn.1997). In keeping with this approach, Minnesota appellate courts have permitted police officers to provide expert testimony concerning subjects that fall within the ambit of their expertise in law

enforcement. *See, e.g., State v. Thompson*, 300 Minn. 220, 222, 218 N.W.2d 760, 762 (1974) (police officer with on-the-job experience qualified as expert in fingerprint identification despite lack of formal training); *State v. Peterson*, 266 Minn. 77, 80, 82, 123 N.W.2d 177, 181 (1963) (experienced police officers permitted to offer opinion as to whether defendant was intoxicated); *State v. Collard*, 414 N.W.2d 733, 736 (Minn.App.1987) (narcotics police officer testified as to amount of cocaine that person is likely to possess for personal use); *State v. Schaffer*, 378 N.W.2d 115, 116 (Minn.App.1985) (police officer permitted to give expert opinion concerning accident reconstruction despite lack of certification).

■ A trial court has wide discretion in conducting a trial, including the admissibility of expert testimony. *State v. Miles*, 585 N.W.2d 368, 371 (Minn.1998). A reviewing court will not reverse the trial court's decision absent an "apparent error." *State v. Myers*, 359 N.W.2d 604, 609 (Minn.1984).

■ Here, Carillo was charged with a violation of Minn.Stat. § 609.229, subd. 2 (1998), which states:

A person who commits a crime for the benefit of, at the direction of, in association with, or motivated by involvement with a criminal gang, with the intent to promote, further, or assist in criminal conduct by gang members is guilty of a crime * * *.

The term "criminal gang" is defined as "any ongoing organization, association, or group of three or more persons, whether formal or informal," which:

(1) has, as one of its primary activities, the commission of one or more of the offenses listed in section 609.11, subdivision 9; [1]

(2) has a common name or common identifying sign or symbol; and

---

1. The offenses included under this provision

include various degrees of murder, assault,

(3) includes members who individually or collectively engage in or have engaged in a pattern of criminal activity.

*Id.*, subd. 1 (1998). In proving a violation of Minn.Stat. § 609.229, subd. 2, the introduction of evidence of prior criminal activity of gang members to demonstrate that the association is a "criminal gang" is not only probative, but is an essential element of the state's case. *State v. Chuon,* 596 N.W.2d 267, 270 (Minn.App.1999), *review denied* (Minn. Aug. 25, 1999).

In an appeal brought by Carillo's co-defendant Matelski, this court held that the trial court properly rejected Matelski's offer to stipulate to the admitted evidence that the Villa Lobos is a criminal gang of which Matelski was a member. *State v. Matelski,* 622 N.W.2d 826, 832 (Minn.App. 2001). That evidence included expert opinion testimony from police officers in the Minnesota Gang Strike Force. *Id.* at 830.

The state correctly points out that the makeup and dynamics of a criminal gang are beyond the experience of the average lay juror, and therefore the opinion of a police officer who has experience with gangs would be helpful to the jury. That, however, is not the precise issue. Rather, the issue is whether it is helpful to the jury, in making the determination as to whether a particular group constitutes a criminal gang, to hear from an expert concerning the primary activities of that particular group or association.

Neither the Minnesota Supreme Court nor the Court of Appeals has had cause to visit this precise question.[2] Those juris-dictions that have addressed the issue, however, have held that, upon establishing proper foundation and meeting the helpfulness requirement, a police officer may offer an expert opinion as to whether a group or association constitutes a criminal gang. *See People v. Gardeley,* 14 Cal.4th 605, 59 Cal.Rptr.2d 356, 927 P.2d 713, 722 (1996) (holding that expert testimony by police officer based on conversations with defendants, Family Crip members, personal investigations of crimes committed by gang members, and information from colleagues and law enforcement organizations was admissible and gave jury sufficient grounds to find that group constituted a "criminal street gang" defined as (1) an ongoing organization of three or more persons (2) that shares a common name or identifying symbol (3) and has as one of its primary activities the commission of one or more enumerated crimes); *State v. Lewis,* 514 N.W.2d 63, 68 (Iowa 1994) (holding that testimony of police officer as to whether Vice Lords was criminal street gang, having crime as one of its primary activities, was both relevant and admissible as to whether Vice Lords had crime as one of the primary activities of organization). We find these decisions persuasive and not inconsistent with existing Minnesota law.

■■ Because we have afforded substantial discretion to trial courts in permitting expert testimony of police officers testifying about matters within the ambit of their law enforcement expertise, we hold that a trial court does not abuse its discretion in permitting a police officer to offer an expert opinion as to whether a particular group constitutes a criminal gang. As

---

burglary, kidnapping, false imprisonment, manslaughter, robbery, witness tampering, criminal sexual conduct, escape from custody, arson, drive-by shooting, harassment and stalking, possession or unlawful use of a firearm, felony violation of chapter 152, and any attempt thereof. Minn.Stat. § 609.11, subd. 9 (1998).

2. *Matelski* did not address the admissibility of expert opinion testimony. In *Chuon,* a police officer with extensive experience concerning gang-related crime and culture was permitted to testify that one of the primary activities of the Red Cambodian Bloods was the commission of violent crime. 596 N.W.2d at 269. The propriety of admitting this evidence as expert testimony, however, was not an issue in that case.

always, the admissibility of such testimony is subject to a trial court's preliminary, discretionary determination that the expert officer's testimony will be helpful to the jury and that the officer possesses an adequate foundation of knowledge in the subject area to justify the opinion. Minn. R.Evid. 702; *see also State v. Bauer*, 598 N.W.2d 352, 369 (Minn.1999) (holding that trial court has wide discretion in determining sufficiency of foundation for opinion testimony).

Carillo maintains that the question of whether a group constitutes a criminal gang constitutes a question of law, or perhaps a mixed question of law and fact, on which opinion testimony is of little help to the trier of fact. *State v. Chambers*, 507 N.W.2d 237, 238 (Minn.1993). Carillo suggests that the state must prove its case by presenting the criminal records of members of a gang rather than relying on expert testimony. We cannot agree. Standing alone, a laundry list of criminal convictions attributed to certain members of a particular group could leave many unanswered questions in the minds of jurors when determining whether that group constitutes a criminal gang. A law enforcement official whose duties focus on criminal gangs and who has knowledge and experience concerning the activities of a particular gang, on the other hand, is able to offer a factual perspective that is both helpful and not otherwise available to a lay juror.

Accordingly, in the present case, the trial court did not abuse its discretion in permitting a police officer whose duties focus on gang-related crime and who has personal knowledge concerning the criminal activities of the Villa Lobos to testify that the Villa Lobos gang constitutes a criminal gang.

2. Carillo contends that the trial court erred in excluding the testimony of Vanessa Van, a defense witness who would have testified that Miller offered to change her testimony in exchange for money. Carillo further argues that the trial court's decision to exclude this evidence breached Carillo's constitutional right to present a defense. The trial court stated that it was excluding the testimony as inadmissible hearsay.

■ Appellate courts generally defer to the trial court's evidentiary rulings, which will not be overturned absent an abuse of discretion. *State v. Kelly*, 435 N.W.2d 807, 813 (Minn.1989).

■ Hearsay is generally not admissible. Minn.R.Evid. 802. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn.R.Evid. 801(c). An out-of-court statement offered not to prove the truth of the matter asserted, but rather for impeachment purposes falls outside the hearsay rule. *State v. Hanley*, 363 N.W.2d 735, 740 (Minn.1985).

■ Miller's out-of-court statement—a solicitation of a payoff in exchange for revised testimony—was offered for the impeachment purpose to show veracity or bias of a witness rather than to prove the truth of the matter asserted. *See* 3A *Wigmore on Evidence* § 957 (Chadbourn rev. ed.1970) (offer by witness to testify falsely or in particular way is admissible for impeachment purposes to show that witness holds no moral scruples to testify truthfully); 6 *Wigmore on Evidence* §§ 1790; 1792 (Chadbourn rev. ed.1976) (utterances intended to serve as circumstantial evidence of bias on the part of the speaker are not offered for truth of matter asserted and therefore hearsay rule is inapplicable). Thus, it was error to

exclude the statement.[3]

■ Nevertheless, the testimony of Miller was by no means the only evidence presented against Carillo. Zachariason's testimony was, on the whole, consistent with that of Miller, and corroborated Miller's version of the events occurring on the date in question. Beyond that, the state produced substantial physical evidence as well as testimony from other witnesses tending to prove Carillo's guilt. Thus, given the testimony of Zachariason as well as the abundance of evidence presented against Carillo, we conclude that failure of the trial court to admit the testimony at issue constitutes harmless error beyond a reasonable doubt. *See, e.g., State v. Greenleaf,* 591 N.W.2d 488, 503 (Minn. 1999) (declaring erroneously admitted hearsay to be harmless beyond reasonable doubt where substantial quantum of other evidence pointed to defendant's guilt), *cert. denied,* 528 U.S. 863, 120 S.Ct. 156, 145 L.Ed.2d 132 (1999). The same harmless error analysis applies to the constitutional issue raised by Carillo. *Cf. State v. Pride,* 528 N.W.2d 862, 867 (Minn.1995) (violation of Confrontation Clause subject to harmless error analysis).

3. Carillo contends that the evidence was insufficient to support the jury's determination, beyond a reasonable doubt, that he was guilty of violating Minn.Stat. § 609.229, subd. 2 (1998). Carillo argues that the state failed to prove essential elements of its case, including that the Villa Lobos was a criminal gang or that Carillo committed the shooting for the benefit of the Villa Lobos. As an initial matter, we note that the statute at issue proscribes certain crimes committed not only "for the benefit of" a criminal gang, but also "at the direction of, in association with, or motivated by involvement with a criminal gang, with the intent to promote, further, or assist in criminal conduct by gang members." *Id.*

■ In considering a claim of insufficient evidence, our review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the finder of fact to reach the verdict that it did. *State v.*

3. Citing *State v. Garceau,* 370 N.W.2d 34, 40 (Minn.App.1985), *review denied* (Minn. Sept. 13, 1985), the state argues that Carillo's attorney should have laid a proper foundation by questioning Miller as to the alleged solicitation of payment if he wished to introduce extrinsic evidence of such bias. Neither *Garceau* nor the treatise passage quoted therein unequivocally stands for that proposition. Carillo correctly observes that a uniform rule among the jurisdictions concerning the foundation question is lacking. *Compare, e.g., State v. Eben,* 81 Ohio App.3d 341, 610 N.E.2d 1109, 1113 (1992) (no requirement that foundation be laid on cross-examination as would be needed with prior inconsistent statements), *with, e.g., Goodwin v. State,* 263 Ark. 856, 568 S.W.2d 3, 8 (1978) (necessary to give witness opportunity on cross-examination to deny out-of-court statements showing bias). The supreme court has, however, permitted rebuttal testimony to show bias of a witness in the absence of foundational cross-examination questions, particularly where there was no objection at trial that no proper foundation had been laid. *Goss v. Goss,* 102

Minn. 346, 349–50, 113 N.W. 690, 692 (1907). "The extent to which such evidence shall be received is a question resting largely in the discretion of the trial court." *Id.* at 350, 113 N.W. at 692. More recently, in dictum, the supreme court has noted that while laying a proper foundation on cross-examination certainly has prudential appeal, it is probably not a strict requirement:

> While we have not required counsel to lay foundation for impeachment of a witness for bias through cross-examination prior to the use of extrinsic evidence, such a rule of practice, subject to the discretion of the trial court, is generally advisable, because by obtaining the evidence from the attacked witness the need for other witnesses may be eliminated.

*State ex rel. Lucas v. Board of Educ.,* 277 N.W.2d 524, 528 n. 2 (Minn.1979) (internal citation omitted). We need not further clarify the matter, as the trial court excluded the evidence based on hearsay grounds alone, not on grounds that Carillo's attorney had failed to lay a proper foundation for the evidence.

*Webb,* 440 N.W.2d 426, 430 (Minn.1989). We must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). We will not disturb the verdict if the finder of fact, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *State v. Alton,* 432 N.W.2d 754, 756 (Minn.1988).

■ First, there exists sufficient evidence to support the inference that Carillo was a member of the Villa Lobos. A deputy sheriff testified that Carillo met the criteria used to determine whether a person is a member of a gang. In addition, the jury saw photographs showing Carillo performing gestures associated with gang membership, wearing clothing associated with gang membership, and associating with members of the Villa Lobos.

■ Second, witnesses testified that Carillo spoke of the Villa Lobos before the shooting, and exclaimed "Villa Lobos for life" immediately after the shooting as he was driving away. This evidence is sufficient to support a jury's inference that Carillo committed the shooting "in association with" or "motivated by" his membership in the Villa Lobos and "with intent to promote, further, or assist in criminal conduct by gang members." Minn.Stat. § 609.229, subd. 2.

■ The remaining question is whether the state introduced sufficient evidence to support a jury determination that the Villa Lobos constitutes a criminal gang. As noted above, an expert witness testified that members of the Villa Lobos have committed crimes and that, in his opinion, the Villa Lobos is a criminal gang. Carillo argues that the expert testimony did not address whether the Villa Lobos engaged in a "pattern" of criminal conduct or that the Villa Lobos had as one of its "primary activities" one or more enumerated crimes, as required to fit within the definition of a "criminal gang." Minn.Stat. § 609.229, subd. 1 (1998). Yet the expert testified that many of the members of the Villa Lobos engaged in a pattern of criminal activity and that its members have an "ongoing enterprise and oftentimes it can be a criminal enterprise, such as narcotics." This testimony was sufficient to support an inference that the Villa Lobos engage in a "pattern" of criminal activity and have such activity as one of its "primary activities." Thus, the evidence was sufficient to support the jury's determination that the Villa Lobos constitutes a "criminal gang" within the meaning of Minn.Stat. § 609.229, subds. 1, 2.

We conclude that the evidence was sufficient to support the jury's finding of guilty beyond a reasonable doubt.

## DECISION

The trial court properly admitted the opinion of an expert as to whether the Villa Lobos constitutes a criminal gang. The trial court erred in excluding an out-of-court statement of a witness offered for impeachment purposes, but the error is harmless beyond a reasonable doubt. The evidence was sufficient to support the jury's verdict.

**Affirmed.**