*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0077**

State of Minnesota,
Respondent,

vs.

Byron Lester Goldtooth,
Appellant.

**Filed September 6, 2016
Affirmed
Hooten, Judge**

Redwood County District Court
File No. 64-CR-12-1081

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Steven S. Collins, Redwood County Attorney, Redwood Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

In this combined direct and postconviction appeal, appellant challenges the postconviction court's denial of relief and an evidentiary hearing and argues that the district

court deprived him of his right to present a defense by excluding certain evidence. We affirm.

**FACTS**

In December 2012, appellant Byron Lester Goldtooth was charged by complaint with two counts of first-degree criminal sexual conduct. The complaint alleged that Goldtooth sexually penetrated C.L., his girlfriend's daughter, when C.L. was less than 13 years of age. Following a jury trial, Goldtooth was found guilty of both counts, and the district court entered convictions on both counts.

Goldtooth filed a notice of appeal from the convictions, but later moved to stay the appeal and remand to the district court for postconviction proceedings, and this court granted the motion. Goldtooth subsequently filed a petition for postconviction relief, arguing that (1) he was deprived of his right to be present at every critical stage of the proceedings; (2) the district court abused its discretion by denying his discovery motion without conducting an in camera review of C.L.'s records; and (3) the state committed a discovery violation by failing to disclose relevant information. In the alternative, Goldtooth argued that he received ineffective assistance of counsel. The postconviction court denied Goldtooth's petition without holding an evidentiary hearing. This consolidated appeal followed.

**D E C I S I O N**

**I.**

Goldtooth challenges the postconviction court's denial of his petition for postconviction relief and his request for an evidentiary hearing. "When a defendant

initially files a direct appeal and then moves for a stay to pursue postconviction relief, [appellate courts] review the postconviction court's decisions using the same standard that [they] apply on direct appeal." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012). When reviewing a postconviction court's denial of relief, "[t]he scope of [an appellate court's] review of factual matters is to determine whether there is sufficient support in the record to sustain the postconviction court's findings." *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013). We review the postconviction court's factual findings for clear error and review its legal conclusions de novo. *Id.* "Ultimately, [appellate courts] review a denial of a petition for postconviction relief, including a denial of relief without an evidentiary hearing, for an abuse of discretion." *Id.* "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotation omitted). A district court must set a hearing on a petition for postconviction relief "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014).

**Right to Be Present at Every Stage of the Proceedings**

Goldtooth first argues that he was deprived of his due process right to be present at every critical stage of the trial proceedings. Specifically, he claims that he was not present on March 6, at which time, according to an affidavit of his trial attorney, arguments regarding his discovery motion were held in chambers. As further support for this allegation, in his petition Goldtooth referenced the district court's March 14, 2014 order denying Goldtooth's discovery motion, which indicates that the matter came before it on

3

March 6, 2014. In denying Goldtooth's petition, the postconviction court stated that the reference to March 6, 2014, was a clerical error and that the discovery motion was argued in open court on March 10, 2014, in Goldtooth's presence.[1]

A defendant in a criminal proceeding has a constitutional right under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to be present "at all critical stages of trial." *Ford v. State*, 690 N.W.2d 706, 712 (Minn. 2005); *see also United v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 1484 (1985). A critical stage of trial includes any proceeding where "his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *State v. Booker*, 770 N.W.2d 161, 165 (Minn. App. 2009) (alteration omitted) (quotations omitted), *review denied* (Minn. Oct. 20, 2009). Minn. R. Crim. P. 26.03 also provides that a defendant must be present at arraignment, plea, and for every stage of trial, including jury selection, opening statements, presentation of evidence, closing arguments, jury instruction, any jury questions dealing with evidence or law, the verdict, and sentencing.

Goldtooth has not cited to a case that expressly holds that a discovery motion is a critical stage of a trial, and rule 26.03 does not specifically list a discovery motion as requiring his presence. Assuming his presence would provide a reasonably substantial relation to his opportunity to defend himself against the charge and reading rule 26.03 broadly to require his presence at every stage of trial, Goldtooth argues that he should have

---

[1] We note that the same judge presided over Goldtooth's trial court proceedings and denied his postconviction petition.

4

been present for the hearing on the discovery motion. However, we are not required to resolve this legal issue. Here, the postconviction court ruled that, based upon its review of the record, Goldtooth *was* present during the arguments regarding his discovery motion. The issue, then, is not whether Goldtooth had a right to be present at the discovery motion arguments, but whether the postconviction court abused its discretion by determining that the record conclusively shows that the discovery motion was heard in open court in Goldtooth's presence and denying his petition.

The record indicates that at a pretrial hearing on September 16, 2013, Goldtooth's attorney, acknowledging that he had just received 140 or 150 pages of discovery from the state, requested a trial date in early February 2014. However, on January 29, 2014, Goldtooth's attorney moved for a continuance of the trial until the state delivered "all requested discovery to the court for *in camera* review to determine what c[ould] be properly used." In a request for additional discovery filed the next day, Goldtooth demanded, among other things, that the state produce all of the records of C.L.'s encounters or communication with child protection or law enforcement, her complete educational and psychological testing records, and all of her hospitalization records.

In a settlement conference attended by Goldtooth on February 3, 2014, Goldtooth's attorney acknowledged that "a good deal" of his discovery request had already been provided by the state, but stated that in his self-described "sort of a scattershot blanket request," he wanted the district court to provide a protective order and do an in camera review of any further records that were disclosed. Goldtooth's attorney explained that he wanted information for impeachment of C.L. regarding her propensity for making false

5

allegations of sexual assault. There is no evidence that Goldtooth's attorney had any information that C.L. had ever made a previous false allegation of sexual abuse. At the settlement conference, after both parties had acknowledged C.L.'s privacy rights related to Goldtooth's discovery, the district court indicated that it wanted to protect those rights and limit the inquiry "into areas of[] [C.L.'s] life that do not have relevant evidence that would be pertinent," but might also have "embarrassing, or very personal information" that "would not be admissible under the Minnesota statutes or the [r]ules of [p]rocedure." The district court instructed the state to file any documents for an in camera review regarding their admissibility by February 20.

On February 20, 2014, the state filed a memorandum in opposition to Goldtooth's request for additional discovery, claiming that the request was vague and overly broad, and that the requested information was irrelevant. The state also argued that C.L.'s medical, psychological, treatment, and child protection records were privileged, private data, and not subject to disclosure under the Confrontation Clause or the Due Process Clause. On that same date, the state responded to the discovery request, stating that it had already disclosed much of the requested information to Goldtooth and that if Goldtooth was requesting further information, a more specific request would be needed to adequately respond. On March 7, 2014, the state provided the district court with 11 pages of documents that had not been previously provided to the defense for an in camera review by the district court.

According to the record, the parties presented their arguments regarding Goldtooth's discovery motion in open court on March 10. Both the court minutes and the district court's subsequent order indicate that Goldtooth was present during the arguments.

There is no evidence in the record that any proceeding was noticed or scheduled on the court calendar for March 6 nor is there any transcript of any hearing or listing of any proceeding in the register of actions that took place on that date. Based upon this record, and the postconviction court's acknowledgment that the March 6 reference was a clerical error, we conclude that the postconviction court did not abuse its discretion by determining that the record conclusively shows that Goldtooth is entitled to no relief on this ground. *See Wallace v. State*, 820 N.W.2d 843, 850 (Minn. 2012) (stating that claim is "indisputably meritless" when record completely contradicts it).

**Right to Discovery**

Goldtooth also claims that his petition for postconviction relief should have been granted on the basis that he was not able to defend himself at trial because of the district court's evidentiary ruling on his discovery motion. After the in camera review by the district court of the state's remaining documents that had not been previously provided to the defense, the district court ruled that Goldtooth was entitled to the discovery of one page out of the 11 pages of the state's documents and that the remaining ten pages, which contained mental health, medical, and treatment information concerning C.L., were not disclosable. The district court also denied Goldtooth's request for discovery from the state regarding additional mental health, medical, and treatment information encompassing "the entire span of [C.L.'s] life," noting that the request was "devoid of scope, time frame, or

7

any narrowing factors whatsoever" and that there was no "indication of how the sought information" would relate to the case. The district court explained that "[t]he discovery rules are not meant to be used as a pole and bait for a personal fishing expedition, especially as it relates to confidential data of a minor alleged to have been the victim of criminal sexual conduct." In denying Goldtooth's motion, the district court reminded the state of its responsibility under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), and Minn. R. Crim. P. 9.01 to disclose discovery that related to the case.

"There is no general constitutional right to discovery in a criminal case . . . ." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977). Discovery in criminal cases is governed by the criminal rules and is more limited than discovery in civil cases. *See State v. Deal*, 740 N.W.2d 755, 760–61 (Minn. 2007). The rules of criminal procedure regarding discovery "are intended to give the parties complete discovery subject to constitutional limitations." Minn. R. Crim. P. 9 cmt.

Goldtooth does not dispute that the records he seeks are private and subject to the Minnesota Government Data Practices Act or other legislation. *See* Minn. Stat. § 13.32 (2014) (protecting educational data); Minn. Stat. § 13.384 (2014) (protecting medical data); Minn. Stat. § 13.46, subd. 2 (2014) (protecting welfare data); Minn. Stat. § 13.46, subd. 7 (2014) (protecting mental health data); Minn. Stat. § 13.822 (2014) (protecting sexual assault communication data); Minn. Stat. § 260B.171, subd. 4 (2014) (protecting juvenile court records); Minn. Stat. § 260C.171 (2014) (protecting child protection records). When a defendant requests private records that are protected by legislation, such as the Minnesota Government Data Practices Act, the district court may conduct an in

camera review in order "to balance the right of the defendant to prepare and present a defense against the rights of victims and witnesses to privacy." *State v. Hokanson*, 821 N.W.2d 340, 349 (Minn. 2012). In order to receive an in camera hearing a defendant must "establish a plausible showing that the information sought would be both material and favorable to his defense." *Id.* (quotations omitted). A district court's ruling on discovery requests rests within its broad discretion and will not be reversed absent a clear abuse of that discretion. *State v. Underdahl*, 767 N.W.2d 677, 684 (Minn. 2009).

We conclude that the postconviction court did not err by determining that Goldtooth was not entitled to additional records from the state for another in camera review by the district court. First, we note that the state provided extensive discovery to Goldtooth. At the March 10, 2014 hearing of Goldtooth's discovery motion, the state indicated that it had no other documents in its possession and that the documents it possessed had either been provided to Goldtooth's attorney or submitted to the district court. In response to the parties' arguments regarding the discovery motion, the district court noted that Goldtooth was improperly attempting to "force law enforcement to act as its own investigator" and that it would perform an in camera review of the 11 pages that had been submitted to it by the state.

Goldtooth argues that he is entitled to an in camera review of C.L.'s mental health, treatment, school, and child protection records. This argument presupposes that there is additional discovery to be disclosed. On appeal, the state maintains that there was no other discovery available to the state and that it disclosed everything in its possession. A prosecutor's disclosure obligations "extend to material and information in the possession

9

or control of members of the prosecution staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report, or with reference to the particular case have reported, to the prosecutor's office." Minn. R. Crim. P. 9.01, subd. 1a(1). We acknowledge that it is possible that some of the records requested by Goldtooth may fall within the prosecutor's disclosure obligations. However, there is no indication in the record, and Goldtooth does not argue, that any further discovery was in the state's possession or control but not disclosed.

To the extent that Goldtooth is impliedly arguing that the prosecutor had a duty to seek out the requested additional discovery for his defense, we reject this argument. Many of the records requested by Goldtooth, specifically C.L.'s mental health, treatment, and school records, likely do not fall within the scope of the prosecutor's required disclosure under rule 9.01.[2] If Goldtooth wanted the entities holding these records to disclose their records to him, he could have attempted to obtain them by subpoena. *See* Minn. R. Crim. P. 22.01, .02 (2014).[3] But, Goldtooth failed to subpoena these records. Therefore, he

---

[2] We acknowledge that it is possible that some of these records could fall within the prosecutor's disclosure obligation, depending on what entity is in possession of the records and its relationship with the prosecutor's office. Minn. R. Crim. P. 9.01, subds. 1a(1), 2(1).

[3] In 2015, after Goldtooth's 2014 trial, Minn. R. Crim. P. 22.01 was amended to provide specific guidance on this issue. Minn. R. Crim. P. 22.01, subd. 2(c) (Supp. 2015) now provides:

> A subpoena requiring the production of privileged or confidential records about a victim as defined in Minnesota Statutes, section 611A.01, paragraph (b), may be served on a third party only by court order. A motion for an order must comply with Rule 10.03, subdivision 1. Before entering the order, the court may require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

cannot now circumvent his failure to subpoena the third parties by claiming that the state committed a discovery violation by not obtaining records outside of its possession and control.

Second, even if the state was in possession of the requested discovery or if Goldtooth had attempted to subpoena such records, the district court properly determined that Goldtooth failed to make a plausible showing that the information he was seeking would be material and favorable to his defense. In his discovery request, Goldtooth broadly requested all school, hospital, psychological, counseling, child protection, and law enforcement records of C.L., without indicating any theories regarding how the records could relate to the defense or why the records were reasonably likely to contain information related to the case. The postconviction court determined, and Goldtooth concedes, that Goldtooth's written motion did not establish the required plausible showing. Goldtooth contends, however, that his attorney made a plausible showing on March 6 during arguments that took place in chambers and were not on the record. But, as discussed above, there is no support in the record that any proceeding was scheduled or took place on March 6. And, Goldtooth concedes that he made no plausible showing at the March 10 oral argument on the discovery motion.

The record of the settlement conference on February 3 reflects that Goldtooth's trial counsel indicated during the discussion of his discovery motion that he wanted information regarding C.L.'s propensity to make false allegations. But, given the state's provision of all the records in its possession and this minimal plausible showing made by Goldtooth at the settlement conference, the district court did not abuse its discretion by denying

11

Goldtooth's motion for additional discovery of C.L.'s school, medical, child protection, and law enforcement records for her entire lifetime. And, given that the plausible showing made in the affidavit of Goldtooth's trial counsel was not presented to the district court, but rather was presented for the first time to the postconviction court, we conclude that the postconviction court did not abuse its discretion by concluding that Goldtooth was not entitled to in camera review of additional records by the district court prior to his trial.

**Violation of Discovery Rules**

Next, Goldtooth argues that he was entitled to an evidentiary hearing on the issue of whether the state violated discovery rules by failing to disclose C.L.'s treatment, mental health, and child protection records when it intended to introduce evidence that C.L. claimed that she suffered from posttraumatic stress disorder as a result of being sexually assaulted. Appellate courts review whether a discovery violation occurred de novo. *State v. Palubicki*, 700 N.W.2d 476, 489 (Minn. 2005). Minn. R. Crim. P. 9.01, subd. 1, provides that the state must "allow access at any reasonable time to all matters within the prosecutor's possession or control that relate to the case." The state must disclose "[t]he results or reports of physical or mental examinations . . . that relate to the case." Minn. R. Crim. P. 9.01, subd. 1(4)(a).

As discussed above, while Goldtooth requested "any and all psychological or counseling evaluations" of C.L. and records of "[a]ny and all encounters of [C.L.] with child protection," the district court denied the request, reasoning that the defense had "made an overly-broad, voluminous request for documents that have no relation to the case at hand."

At trial, when testifying regarding her living situation, C.L. testified that she was living in a group home because of her drug abuse. In response to the prosecutor's question if she had been treated for anything else at the group home, C.L. indicated that she had been treated for her "trauma, PTSD." C.L. indicated, in response to the prosecutor's questions, that PTSD stands for posttraumatic stress disorder and that she suffered from PTSD as a result of "sexual abuse." Goldtooth argues that the testimony elicited by the state reveals that the state knew that the mental health records were relevant, intentionally introduced evidence that C.L. suffered from mental illness at trial, and therefore committed a discovery violation by failing to disclose those records.

The district court had already denied Goldtooth's discovery request as overbroad and had ruled that all but one of the 11 pages submitted by the state for in camera review were inadmissible. And, there is no indication that the state had any other discovery in its possession.[4] Additionally, as the postconviction court observed, although the state deliberately elicited testimony that C.L. suffered from PTSD that was caused by sexual abuse, the state's brief questions on PTSD were isolated and the state did not dwell on C.L.'s mental health. Goldtooth did not object to the prosecutor's questions at trial and,

---

[4] While Goldtooth argues that the state committed a discovery violation, we are satisfied that, after our review of the documents disclosed by the state, including the 11 pages submitted to the district court for in camera review, this argument is without merit. Moreover, given the arguments presented to the district court at the time, we cannot say that the district court abused its discretion by determining that ten of the pages submitted for in camera review were not disclosable to the defense. *See Hokanson*, 821 N.W.2d at 350 (concluding that, after reviewing the documents submitted to the district court for an in camera review, the district court did not abuse its discretion by determining that certain documents were not disclosable to defense).

13

on appeal, raises no other arguments regarding the prosecutor's elicitation of this testimony. Under these circumstances, the postconviction court did not abuse its discretion by determining that the record conclusively showed that Goldtooth is not entitled to postconviction relief on this ground.

**Ineffective Assistance of Counsel**

Goldtooth argues that he is entitled to a hearing on his claim of ineffective assistance of counsel if this court determines that his trial counsel failed to make a plausible showing that the information sought would be material and favorable to his defense. Goldtooth argues that his counsel's failure to make such a showing resulted in his receiving inadequate discovery.

In order to receive a new trial on the ground of ineffective assistance of counsel a "defendant must affirmatively prove that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gates v. State,* 398 N.W.2d 558, 561 (Minn. 1987) (quotations omitted). "The petitioner bears the burden of proof on an ineffective assistance of counsel claim, and there is a strong presumption that counsel's performance fell within a wide range of reasonable assistance." *Bruestle v. State*, 719 N.W.2d 698, 705 (Minn. 2006) (quotations omitted). Appellate courts review claims of ineffective assistance of counsel de novo because they involve mixed questions of law and fact. *Dobbins v. State*, 788 N.W.2d 719, 728 (Minn. 2010).

Goldtooth concedes that his written motion failed to make a plausible showing, but the record indicates that, at the settlement conference on February 3, 2014, his trial counsel

14

narrowed his request to information regarding C.L.'s propensity to make false allegations of sexual misconduct. In response, the district court acknowledged that, generally, such information might be relevant and admissible.

Even assuming that Goldtooth's trial attorney did not make a plausible showing and that such a failure was objectively unreasonable, Goldtooth cannot show that there is a reasonable probability that the result of the proceeding would have been different if his trial counsel had attempted to make a stronger plausible showing. If Goldtooth made a plausible showing, the district court would have then reviewed the requested information in camera, balancing "the right of the defendant to prepare and present a defense against the rights of victims and witnesses to privacy." *Hokanson*, 821 N.W.2d at 349. Assuming that the district court determined that some of these requested records were relevant to the charges against Goldtooth and his right to prepare a defense outweighed C.L.'s right to privacy, the evidence could, according to Goldtooth, provide support for his arguments regarding C.L.'s motive to fabricate allegations of misconduct. In his affidavit, Goldtooth's trial counsel states that the defense at trial was that C.L. could be fabricating the allegations due to a combination of four possible theories: (1) she wanted to live with her grandmother, rather than with her mother and Goldtooth; (2) she was angry with her mother given the severe dysfunction present in the family; (3) she was trying to deflect blame from her escalating delinquent behavior; and (4) she invested herself in the fabrications during treatment and came to believe them.

But, C.L. admitted at trial that she had behavior and drug problems and grew up in a dysfunctional and abusive environment, noting that she had a nonexistent relationship

15

with her mother and that they had never been close. C.L. also testified that she "never really liked" Goldtooth, that he "didn't come off as a nice person," and that her mother tried to push her into a father-daughter relationship with Goldtooth that she did not want. C.L. testified that she got into arguments with Goldtooth when she lived with him and her mother. Goldtooth testified that C.L. and her sisters were happy living with their grandmother and that C.L. had a poor relationship with her mother, including the fact that C.L. had threatened her mother. Moreover, Goldtooth had the opportunity to cross-examine C.L., her mother, and her grandmother regarding C.L.'s relationship with her mother, her preferred living arrangements, and her behavior. Based upon this testimony and Goldtooth's opportunity to cross-examine C.L., Goldtooth had the opportunity during trial to argue that C.L. had a motive for fabricating the sexual assault. Under these circumstances, there is no reasonable probability that the result of the trial would have been different if Goldtooth's trial counsel had made a stronger plausible showing.

In sum, as the petition, files, and record conclusively show that Goldtooth is not entitled to relief, we conclude that the postconviction court did not abuse its discretion by denying Goldtooth's petition without an evidentiary hearing.

## II.

In his direct appeal from his conviction, Goldtooth argues that the district court deprived him of his due process right to present a defense by excluding certain evidence. Due process requires that a criminal defendant be given "a meaningful opportunity to present a complete defense." *Carlton v. State*, 816 N.W.2d 590, 614 (Minn. 2012) (quotation omitted). Appellate courts "review evidentiary rulings under an abuse of

16

discretion standard even when it is claimed that the exclusion of evidence deprived the defendant of his constitutional right to present a complete defense." *State v. Penkaty*, 708 N.W.2d 185, 201 (Minn. 2006).

**Evidence of Other Sexual Abuse**

First, Goldtooth argues that the district court abused its discretion by excluding evidence of other sexual abuse in the home where he and C.L. lived. Goldtooth sought to testify that another individual had sexually assaulted C.L.'s sister in the home at some point. The state objected to this evidence on the grounds of relevance, and Goldtooth argued that the evidence was relevant to show that the police failed to investigate red flags and to show that there was an atmosphere of sexual activity in the home. The district court sustained the objection.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Goldtooth asserts that he was not attempting to introduce this testimony as alternative perpetrator evidence, but as an explanation for why C.L. would choose to fabricate a claim of sexual abuse. We conclude that the district court did not abuse its discretion in excluding this evidence as irrelevant, especially as there appears to be no evidence in the record indicating that C.L. knew of the alleged sexual assault of her sister.

**Evidence of C.L. Threatening Her Mother**

Next, Goldtooth argues that the district court abused its discretion by excluding evidence that, a few months before disclosing that Goldtooth had sexually assaulted her,

17

C.L. threatened in a letter to make her mother's life "a living hell."  The district court excluded this testimony during direct examination of B.L., C.L.'s mother, on the ground of relevance, and during direct examination of Goldtooth, on the ground of hearsay. Goldtooth was unable to present the letter in which C.L. allegedly made these statements.

"Relevant evidence is generally admissible."  *State v. McArthur*, 730 N.W.2d 44, 51 (Minn. 2007); *see also* Minn. R. Evid. 402.  Because it is probative of witness credibility, bias is almost always relevant.  *McArthur*, 730 N.W.2d at 51.  Hearsay is generally not admissible.  Minn. R. Evid. 802.  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Minn. R. Evid. 801(c).  An out of court statement offered for the impeachment purpose of showing bias of a witness, rather than the truth of the matter asserted, is not hearsay.  *See State v. Carillo*, 623 N.W.2d 922, 928 (Minn. App. 2001) (concluding that it was error for district court to exclude as hearsay testimony offered for impeachment purpose to show bias where witness offered to revise testimony for payoff), *review denied* (Minn. June 19, 2001).

C.L.'s alleged statement that she was going to make her mother's life "a living hell" was offered for the impeachment purpose of showing C.L.'s motive for fabricating allegations against Goldtooth, her mother's boyfriend.  Because the testimony regarding the letter tends to show that C.L. had a motive for fabricating allegations against Goldtooth, the district court's exclusion of the evidence was erroneous.

Minnesota appellate courts apply two different harmless error tests for determining whether the defendant was prejudiced by the admission of evidence, depending on whether

18

the district court's erroneous admission of evidence implicates a constitutional right. *State v. Sanders*, 775 N.W.2d 883, 887 (Minn. 2009).

> When the error implicates a constitutional right, a new trial is required unless the [s]tate can show beyond a reasonable doubt that the error was harmless. An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error. When the error does not implicate a constitutional right, a new trial is required only when the error substantially influenced the jury's verdict.

*Id.* (citations omitted). Goldtooth contends that the heightened harmless error test that applies to errors implicating constitutional rights applies, presumably because he is arguing that the district court's erroneous exclusion of C.L.'s threat to make her mother's life "a living hell" as hearsay denied him his due process right to present a defense. It is unnecessary for this court to determine which of the harmless error tests apply because the district court's error was harmless even under the heightened harmless error test.

Any error in excluding the testimony that C.L. threatened to make her mother's life "a living hell" or in excluding the evidence of other sexual abuse in the home is harmless beyond a reasonable doubt. Goldtooth sought to introduce this evidence in order to show C.L.'s potential motive for fabricating allegations of sexual abuse. Goldtooth, however, testified regarding C.L.'s deteriorating relationship with her mother, and C.L. testified that she had "no relationship" and had never had a relationship with her mother. Additionally, Goldtooth testified that he was aware that C.L. had threatened her mother. Under these circumstances, there is no reasonable probability that the verdict might have been different if the evidence had been admitted because both Goldtooth and C.L. testified regarding C.L.'s troubled relationship with her mother.

19

In sum, while the district court abused its discretion by excluding as hearsay evidence offered for the purpose of impeaching C.L., any error in excluding the testimony was harmless. Therefore, the district court did not deprive Goldtooth of his due process right to present a defense.

**Affirmed.**