**STATE of Minnesota, Respondent,**

v.

**Scott Patrick MATELSKI, Appellant.**

No. C1–00–660.

Court of Appeals of Minnesota.

Feb. 20, 2001.

---

828

Mike Hatch, Attorney General, Natalie E. Hudson, Assistant Attorney General, St. Paul, MN; and Lisa Borgen, Clay County Attorney, Courthouse, Moorhead, MN, for respondent.

John M. Stuart, State Public Defender, Rochelle R. Winn, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by ANDERSON, Presiding Judge, HALBROOKS, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge.*

Appellant Scott Matelski challenges his conviction for aiding and abetting a drive-

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

by shooting in violation of Minn.Stat. § 609.66, subd. 1e(b) (1998) and aiding and abetting a crime committed for the benefit of a gang in violation of Minn.Stat. § 609.229, subd. 2 (1998). Because we conclude that there was sufficient evidence to convict Matelski and the district court properly admitted gang evidence to prove that Matelski aided and abetted his fellow gang member in committing the crime, we affirm. But we modify Matelski's sentence because he was improperly adjudicated guilty of both a crime and a lesser-included offense of that crime.

## FACTS

Appellant, along with Richard Carillo, Rebekah Miller and Laura Zachariason, was driving by Romkey Park, in Moorhead, Minnesota, when someone yelled insults in the direction of their car. Angrily, Carillo drove Miller's 1988 silver Oldsmobile out of town. He stopped the car on a country road and took out a revolver and an Altoids mint container full of bullets. Carillo and Matelski shot the gun at some bottles and Matelski wiped his fingerprints off of the gun. Matelski and Carillo were both wearing green shirts.

On the way back to town, Carillo stopped the car to speak to a person on the side of the road. Miller testified that the man appeared "Mexican." Carillo showed the gun to the man and Matelski got out of the car to talk to the man. Miller heard them discussing "Villa Lobos." The four also stopped at a gas station where Carillo and Matelski spoke to another man, unsuccessfully urging him to join them in going to the park to start a confrontation.

The group drove to an area in Romkey Park where five or six persons were playing basketball. One person threw an object into the car, striking Matelski in the lip. Matelski got out of the car to confront the thrower. Carillo, sitting in the driver's seat of the car, reached across Miller in the passenger seat and shot the gun two or three times across her face. Then Carillo stepped out of the car and shot over the top of the car twice.

After the shooting, Carillo dropped the gun on the ground and Matelski yelled at him to pick it up. Carillo did so and he and Matelski got back in the car. As they were leaving, Carillo and Matelski shouted "Villa Lobos for life," "that's what you get," "next time would be worse," and some Spanish phrases. In the car, Matelski and Carillo told Miller and Zachariason to "keep [their] stories straight" should they get caught.

The group went to Miller's apartment where Matelski changed out of his green shirt into Miller's jersey. After changing vehicles, from Miller's car to Zachariason's, the four drove past the park and then went to a friend's apartment to watch the ten o'clock news. The police apprehended all four as they were leaving the apartment. Both Carillo and Matelski initially denied any involvement in the shooting.

After Miller consented to a search of her car and apartment, police found the Altoids tin and the gun in her dresser drawer. Zachariason testified that she had seen Carillo place the gun into the drawer. Miller later found Matelski's shirt and a hat with the initials "VL" and a five-pointed star on it and gave them to the police. Miller testified that Carillo was a member of the Villa Lobos gang and that his nickname was "Hi-C." Matelski's "gang" nickname was "Half–Pint."

With a warrant, police searched Matelski's apartment and recovered (1) a Green Bay Packers hat with "VL," a five-pointed star, and the name "Half–Pint" written on it; (2) another hat with a six-pointed star with a pitchfork pointing through it and the abbreviation "VL" written on it; (3) a martial-arts weapon shaped like a pitchfork; (4) a tool box with the name "Villa Lobos" written inside of it; (5) a pair of shorts with the abbreviation "VL" and other gang symbols written on them; (6) a pair of pants with writing stating "Half–

Pint," and "VL," and showing pitchforks and five-pointed stars; and (7) ten photographs depicting, among other things, Matelski, Carillo, and others wearing green clothing and showing hand signals.

Clay County Sheriff's Detective Tim Griffin, a member of the Northwest Gang Strike Force, testified at trial that the abbreviation "VL" and the five-pointed star symbolize the Villa Lobos criminal gang. Moorhead Police Officer Jay Phillipi, also a gang-strike-force member, testified that he had known Carillo and Matelski by their nicknames, Hi–C and Half-Pint, for some time. He also stated that an informant had told him that Hi–C and Half–Pint were involved in the crime. He testified that the hand signals are "gang" hand signals, that gang members often wear identifying colors and, that Villa Lobos gang members wear green clothing to identify that they are members of the Villa Lobos gang. He also testified that the pitchforks symbolize the Villa Lobos gang's disrespect for another gang.

Clay County Sheriff's Lieutenant Jerome Thorsen, also a gang-strike-force member, named Matelski as a member of the Villa Lobos gang. He further testified that he has documented 86 members of the Villa Lobos gang, that the gang members collectively and individually engage in a pattern of criminal behavior, and that gang members other than Matelski and Carillo "have been involved in and some * * * have been arrested and convicted of crimes including aggravated robbery, assault, burglary, theft * * * [a]nd numerous drug offenses." Thorsen also testified about five of the ten criteria that the strike force uses to determine gang membership: (1) admission to being a gang member; (2) association with known gang members; (3) having tattoos indicating gang membership; (4) wearing gang symbols; and (5) inclusion in photographs with known gang members or in photographs depicting persons giving gang hand signals. The district court admitted this evidence and testimony over defense counsels' objections.

Prior to trial, Matelski offered to stipulate that he was a member of the Villa Lobos, a criminal street gang. The district court refused to accept Matelski's offer to stipulate. After a three-day trial in which Matelski and Carillo were tried together, the jury found the co-defendants guilty. The district court adjudicated Matelski guilty of both aiding and abetting a drive-by shooting and aiding and abetting a crime committed for the benefit of a gang, sentenced Matelski to 60 months in prison for aiding and abetting a crime committed for the benefit of a gang, and stayed imposition of the sentence for the aiding and abetting a drive-by-shooting charge. This appeal followed.

## ISSUES

I. Was the evidence sufficient to convict Matelski?

II. Did the district court abuse its discretion in refusing to accept Matelski's stipulation that he was a member of the Villa Lobos gang?

III. Did the district court err in adjudicating Matelski guilty of both aiding and abetting a crime committed for the benefit of a gang and aiding and abetting a drive-by shooting?

## ANALYSIS

### I.

 Matelski argues that the evidence of his guilt was legally insufficient. On appeal, a reviewing court performs a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient for the jurors to reach their verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). A verdict will not be disturbed

[i]f the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could rea-

sonably conclude that defendant was proven guilty of the offense charged. *State v. Norgaard,* 272 Minn. 48, 52, 136 N.W.2d 628, 632 (1965). The reviewing court must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Steinbuch,* 514 N.W.2d 793, 799 (Minn.1994).

A person may be held liable for another's crime "if the person intentionally aids, advises, hires, counsels or conspires with * * * the other to commit the crime." Minn.Stat. § 609.05, subd. 1 (1998). A defendant is criminally liable for aiding and abetting if he or she played a knowing role in the crime and took no steps to "thwart its completion." *State v. Ostrem,* 535 N.W.2d 916, 924 (Minn.1995). But mere presence at the crime scene "does not alone prove that a person aided or abetted, because inaction, knowledge or passive acquiescence does not rise to the level of criminal culpability." *Id.* (citing *State v. Russell,* 503 N.W.2d 110, 114 (Minn.1993)). While active participation in the offense's overt act is not required, a person's presence, companionship, and conduct before and after an offense are circumstances from which a person's criminal intent may be inferred. *Id.* (citing *State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981)).

Several facts support the jury's conclusion that Matelski knew that Carillo planned on shooting the gun in the park in retaliation for the insults they had suffered earlier. First, Matelski, an admitted gang member, was driving around with Carillo, another gang member, when they were insulted in the park. The group then went to a rural area to practice shooting the gun. Before returning to the park, they showed the gun and spoke of Villa Lobos to one person and told another person that they planned on starting a confrontation. Witnesses testified that Matelski was present when Carillo shot the gun. After the shooting, Matelski yelled to Carillo to pick up the gun and they both yelled things having to do with Villa Lobos. Also after the shooting, Matelski changed cloth-

ing, discarding his green shirt, which may have been indicative of Villa Lobos gang membership. The group also changed cars before driving by the park where the shooting occurred. Matelski and Carillo initially denied their involvement in the shooting and told Miller and Zachariason to "keep [their] stories straight" if either got caught. All of these actions reasonably support the jury's conclusion that Matelski knew of Carillo's plan to shoot the gun in the park and that he aided in that effort.

## II.

Matelski further argues that the district court abused its discretion in refusing to accept his pretrial offer to stipulate that he is a member of the Villa Lobos criminal gang. Instead, over objection, the district court admitted extensive gang evidence and testimony that Matelski contends is cumulative and unfairly prejudicial.

The district court has discretion in the admissibility of evidence and its ruling will not be reversed absent an abuse of discretion. *State v. Kelly,* 435 N.W.2d 807, 813 (Minn.1989). Upon review, the defendant has the burden of proving that the district court abused its discretion in admitting the evidence and that the defendant was prejudiced. *State v. Willis,* 559 N.W.2d 693, 698 (Minn.1997). Reversal is warranted only when there is any reasonable doubt the result would have differed had the evidence not been admitted. *Id.* at 699. For two reasons, we conclude that the district court did not abuse its discretion in refusing to accept Matelski's offer to stipulate that he was a member of Villa Lobos, a criminal street gang.

First, to prove the underlying crime of aiding and abetting, the state needed to present evidence of Matelski and Carillo's shared gang membership. Committing a crime for the benefit of a gang is a substantive offense. Minn.Stat. § 609.229, subd. 2 (1998); *State v. Chuon,* 596

N.W.2d 267, 270 (Minn.App.1999), *review denied* (Minn. Aug. 25, 1999). A "criminal gang" is a group of three or more persons that

> (1) has, as one of its primary activities, the commission of one or more offenses listed in section 609.11, subdivision 9; (2) has a common name or * * * identifying sign or symbol; and (3) and includes members who individually or collectively engage in or have engaged in a pattern of criminal activity.

Minn.Stat. § 609.229, subd. 1 (1998). Minn.Stat. § 609.11, subd. 9 (1998) includes the crime of drive-by shooting.

■ To convict Matelski of aiding and abetting a crime committed for the benefit of a gang, the state needed to prove first that Matelski aided and abetted Carillo and second, that Matelski committed his crime for the benefit of a gang. To prove that Matelski aided and abetted Carillo, the state needed to prove that Matelski had a knowing role in the crime. *See Ostrem*, 535 N.W.2d at 924. That knowing role can be inferred from presence, companionship, and conduct before and after the crime. *Id.* To further prove that Matelski committed a crime for the benefit of a gang, the state needed to prove that the Villa Lobos is a criminal gang, that Matelski is a member of that gang, and that he committed the crime for the benefit of the gang. *See* Minn.Stat. § 609.229, subd. 1 (1998); *Chuon*, 596 N.W.2d at 269.

■ Gang-related evidence, including evidence of criminal activity by other gang members, is admissible to prove that the defendant committed a crime for the benefit of a gang. *See Chuon*, 596 N.W.2d at 270. Here, the gang evidence is essential to proving that Matelski aided and abetted Carillo. Although Matelski's offer to stipulate may have helped prove that the crime was committed for the benefit of a gang, the gang evidence and testimony was needed to show that Matelski and Carillo were often in each other's presence, were companions and participated in gang activities together. These facts, in turn, help establish that Matelski aided and abetted Carillo's crime.

■ Second, even if the gang evidence was not needed to help prove Matelski's knowing role in Carillo's crime, a criminal defendant's offer to stipulate generally does not take away the state's right to offer evidence. *State v. Davidson*, 351 N.W.2d 8, 10 (Minn.1984). A defendant may not be allowed to unilaterally control the need for relevant evidence by offering to stipulate, especially where the evidence bears upon other issues not covered by the stipulation. *Id.* But where the potential for unfair prejudice substantially outweighs the evidence's probative value, there are exceptions to the general rule. *Id.* at 11; *see also* Minn.R.Evid. 403.

Minnesota courts have recognized that a district court must accept a defendant's stipulation to prior convictions in certain cases unless the facts underlying the prior conviction are relevant to some disputed issue. *See Davidson*, 351 N.W.2d at 11 (defendant may stipulate to being convicted felon for purposes of trial for felon in possession of handgun); *State v. Berkelman*, 355 N.W.2d 394, 397 (Minn.1984) (in gross misdemeanor DWI prosecution, defendant's offer to stipulate to prior convictions prevents admission of evidence); *State v. Clark*, 375 N.W.2d 59, 62 (Minn. App.1985) (defendant charged with aggravated DWI permitted to avoid evidence of prior conviction for driving after revocation).

■ Matelski would like this court to add to the *Berkelman* exception and declare that a district court ·must accept a criminal defendant's offer to stipulate to being a gang member when being tried for a crime committed for the benefit of a gang. But outside of the prior conviction exceptions discussed, district courts generally do not abuse their discretion in not allowing defendants to preclude prosecution evidence by an offer to stipulate. *See, e.g., State v. Durfee*, 322 N.W.2d 778, 785–86 (Minn.1982) (defense could not stipulate

that victim suffered great bodily harm so that photographs would not be admitted into evidence); *State v. Barsness*, 473 N.W.2d 325, 328 (Minn.App.1991) (state not required to accept stipulation as to cause of death of infant so as to prevent photographs from being admitted into evidence), *review denied* (Minn. Aug. 29, 1991). There is no reason to make an exception here and allow persons charged with committing a crime for the benefit of a gang to stipulate to membership in a criminal gang. Accordingly, we conclude that the district court did not abuse its discretion in refusing Matelski's offer to stipulate that he was a member of a criminal gang.

### III.

▇ Finally, Matelski argues that because aiding and abetting a drive-by shooting is a lesser-included offense of aiding and abetting a crime committed for the benefit of a gang, the aiding and abetting a drive-by shooting conviction should be vacated. The state concedes that aiding and abetting a drive-by shooting is a lesser-included offense of aiding and abetting a crime committed for the benefit of a gang and that it was error for the district court to adjudicate Matelski guilty of both crimes. We agree.

▇ Under Minnesota law, a defendant "may be convicted of either the crime charged or an included offense, but not both." Minn.Stat. § 609.04, subd. 1 (1998). "A crime necessarily proved if the crime charged were proved" is a lesser-included offense. *Id.* Thus, because aiding and abetting a drive-by shooting is a lesser-included charge of aiding and abetting a crime committed for the benefit of a gang, Matelski may only be formally adjudicated guilty of one of those crimes. The proper procedure for the district court to follow in this situation is to adjudicate formally and impose sentence on one count only. *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984). If the adjudicated conviction is later vacated for a reason not relevant to the remaining conviction, the remaining but not adjudicated conviction may be formally adjudicated and sentence may be imposed. *Id.*

Accordingly, we vacate Matelski's conviction for aiding and abetting a drive-by shooting. *See State v. Hackler*, 532 N.W.2d 559, 559 (Minn.1995) (order op.) (affirming defendant's conviction for first-degree assault but vacating conviction of second-degree assault because that crime is lesser-included offense of first-degree assault).

### DECISION

Because there is sufficient evidence for the jury to convict Matelski of aiding and abetting a crime committed for the benefit of a gang, and the district court did not abuse its discretion in admitting necessary gang-related evidence and testimony, we affirm. But because the district court erred in adjudicating Matelski guilty of both the crimes of aiding and abetting a crime committed for the benefit of a gang and aiding and abetting a drive-by shooting, which is a lesser-included offense of aiding and abetting a crime committed for the benefit of a gang, we vacate Matelski's conviction for aiding and abetting a drive-by shooting.

**Affirmed as modified.**