**STATE of Minnesota, Respondent,**

v.

**Richard Robert WEMYSS, a/k/a Richard Robert Weyness, Appellant.**

**No. A04–1001.**

Court of Appeals of Minnesota.

May 24, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Mark N. Lystig, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Minneapolis, MN; and Timothy T. Mulrooney, Rochelle Hauser (certified student attorney), Henson & Efron, P.A., Minneapolis, MN, for appellant.

Considered and decided by DIETZEN, Presiding Judge; TOUSSAINT, Chief Judge; and SHUMAKER, Judge.

## OPINION

DIETZEN, Judge.

Appellant challenges his conviction for failure to register as a predatory offender, arguing that the district court erred by admitting irrelevant and prejudicial evidence and that the evidence was insufficient to sustain the charge. We conclude that the district court abused its discretion in admitting some of the challenged evidence, but the error was harmless, and the evidence as a whole was sufficient to support the jury's verdict. Therefore, we affirm.

## FACTS

On February 27, 1996, appellant Richard Robert Wemyss was convicted of third-degree criminal sexual conduct. As part of his sentence, Wemyss was required to register as a predatory sex offender with the Bureau of Criminal Apprehension (BCA) for ten years. Wemyss initially registered on March 15, 1996. Since that time, Wemyss periodically updated the BCA and local law enforcement authorities with changes in address, place of employment, and ownership of vehicles. The BCA annually attempted to contact Wemyss by mail for verification of his data, but the letters were either unanswered or undeliverable to the address on file. As of August 2002, Wemyss's most recent address on file with the BCA was 435 University Avenue in Saint Paul.

On July 10, 2003, a state patrol officer conducted a traffic stop of a vehicle and noticed Wemyss among the passengers. Wemyss told the officer that he was "staying" at 1003 Montclair, in Mounds View, but his identification card listed his address as 1260 Oakcrest, in Roseville. Wemyss indicated that he was on his way to 1003 Montclair to baby-sit his significant other's children and was, therefore, released at the scene. The patrol officer informed police in Mounds View that Wemyss was headed to 1003 Montclair.

Later that evening, two Mounds View police officers contacted Wemyss at the front door of the 1003 Montclair residence. The officers asked Wemyss to produce identification and accompanied him as he retrieved a driver's license from a bedroom dresser. The driver's license listed Wemyss's address as 2466 County Road I in Mounds View. The officers ran a computer check for Wemyss's registered address, which was 435 University Avenue in Saint Paul. Wemyss first told the officers that he had been "living" at 1003 Montclair "for

weeks," and when pressed by the officers about his 435 University Avenue address, Wemyss became belligerent and claimed that he did not have to register his residence. Wemyss finally claimed that he lived at 435 University Avenue and only stayed at 1003 Montclair "on and off." After verifying that Wemyss had not registered the 1003 Montclair address, the officers arrested Wemyss for failure to register as a predatory offender on July 10, 2003, under Minn.Stat. § 243.166 (2002 & Supp.2003). A police investigator later confirmed that Wemyss had not registered the 1003 Montclair address with the Mounds View Police Department.

At a pretrial hearing, Wemyss stipulated to the following two of the four elements of the offense: (1) he was a person required to register as a predatory offender; and (2) the time period during which he was required to register had not lapsed. Wemyss did not stipulate to the element that he knowingly violated any of the statutory predatory-offender registration requirements. Wemyss testified that he understood that he was stipulating to the first element so he could "remove any mention of the prior criminal sexual conduct charge from the jury."

After accepting the stipulation, the prosecutor advised Wemyss that the state would be introducing exhibits of Wemyss's prior predatory-offender registrations and that some of the registrations would mention his underlying conviction. Wemyss objected to the exhibits, arguing that his past registrations were not relevant to the current offense and that the exhibits were contrary to the intent of Wemyss's stipulation, namely, removing any mention of his underlying conviction from the purview of the jury. The state argued that the exhib-

its were important for the jury to understand Wemyss's compliance history with the predatory-registration statute. The district court found that the exhibits were relevant and probative and overruled the objection. The district court also denied Wemyss's requests to redact terms such as "sex offender" and "predatory offender" from the exhibits.

At trial, the state called the program administrator in the BCA's predatory-registration unit to introduce 29 exhibits regarding Wemyss's history of compliance with applicable predatory-registration requirements. The exhibits were generally in three categories. First, 19 exhibits were predatory offender information forms (predatory information forms). These exhibits were completed by Wemyss and signed by a probation officer whenever Wemyss changed his address, employment, or vehicle. Second, one exhibit was entitled "Sex Offender Notification and Registration Form" (SO Registration Form), which stated that Wemyss was notified of his duty to register as a "sex offender" because he was "convicted of engaging in sexual penetration with a 14 [year] old neighbor girl." Third, there were nine exhibits which consisted of five annual requests (annual request forms) for Wemyss to provide updated information to the BCA. Four out of the nine exhibits superimposed a mailing envelope with the notation "Returned to Sender" over the BCA requests.[1]

The state introduced testimony from the state patrol officer, the Mounds View police officer, the police investigator, the BCA administrator, and Wemyss's supervised-release agent. The supervised-release agent testified that, in his opinion,

---

**1.** One of the five BCA memoranda did not feature a superimposed "Returned to Sender" envelope, but instead contained a notation on the memorandum that no reply had been received.

Wemyss had knowledge of the predatory offender registration procedures. The only evidence introduced by Wemyss consisted of testimony from a Roseville police lieutenant, who testified that he shredded a BCA "Change of Information Form" after Wemyss went to the police department to change his address on file but failed to provide the lieutenant with a complete updated address.

After completion of the trial, the jury found Wemyss guilty of failure to register as a predatory offender. The district court sentenced Wemyss to two years in prison, imposed a $50 fine, and extended the period that Wemyss must register as a predatory offender by five years. This appeal follows.

## ISSUES

1. Did the district court err when it admitted all of the state's exhibits into evidence?

2. Were the district court's erroneous evidentiary rulings harmless?

3. Was the state's evidence subject to *Spreigl* procedures?

4. Was the state's evidence sufficient to support the jury's verdict?

## ANALYSIS

Wemyss was convicted under a statute that makes it a felony for a predatory offender to "knowingly violate[ ]" the statute's registration requirements. Minn. Stat. § 243.166, subd. 5(a) (2002). A person is required to register under the predatory-offender statute if the person was convicted of, among other crimes, third-degree criminal sexual conduct. *Id.*, subd. 1(a)(1)(iii) (2002). Under the statute's registration procedures, at least five days before a move to a new address, a predatory offender must give written notice to the "assigned corrections agent or to the law enforcement authority with which the [offender] currently is registered." *Id.*, subd. 3(b) (Supp.2003). The offender must also give written notice to the corrections agent or law enforcement jurisdiction that has authority over the offender's prior place of residence. *Id.* When registering with a corrections agent or law enforcement entity, an offender must provide addresses for primary and secondary residences. *Id.*, subd. 4a(b)(1)-(2) (Supp.2003). The statute also requires the BCA to "mail a verification form to the last reported address of the [offender's] residence." *Id.*, subd. 4(e)(1) (2002). If the offender fails to complete and mail the verification form within ten days, the offender is in violation of the statute. *Id.*, subd. 4(e)(3). We now turn to an analysis of the admissibility of exhibits presented at trial.

### I.

*Evidentiary Rulings*

█ Wemyss argues that his conviction must be reversed because the state's registration exhibits were erroneously admitted. Wemyss argues that the admission of the exhibits, which included the labels "sex offender" and "predatory offender," undermined the stipulation he made to his prior conviction. The state contends that the exhibits were relevant because they tended to prove that Wemyss was familiar with the registration requirements under the predatory-offender statute, and the probative value of the exhibits was not substantially outweighed by a danger of unfair prejudice.

█ "The district court has discretion in the admissibility of evidence and its ruling will not be reversed absent an abuse of discretion." *State v. Matelski*, 622 N.W.2d 826, 831 (Minn.App.2001), *review denied* (Minn. May 15, 2001). A defendant has the burden to show that evidence was

wrongly admitted and resulted in prejudice. *Id.* Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence." Minn. R. Evid. 403. Evidence of another crime, wrong, or act is not admissible as character evidence in a subsequent proceeding, unless the evidence is used for another purpose, such as proof that the defendant had knowledge of an issue relevant to the proceeding. Minn. R. Evid. 404(b). The issue, then, is whether the value of the exhibits was substantially outweighed by the danger of unfair prejudice.

■ A criminal defendant has a right to keep "potentially prejudicial evidence of [a] prior conviction from the jury," even when that conviction is an element of the offense, by stipulating to the prior conviction and removing the issue from the case. *State v. Berkelman,* 355 N.W.2d 394, 396–97 (Minn.1984); *see also State v. Davidson,* 351 N.W.2d 8, 12 (Minn.1984). Although the parties have not cited any cases extending this right to a prosecution for failure to register as a predatory offender, the state does not contest Wemyss's exercise of that right in this case. The supreme court has stated, with regard to evidence of a prior felony conviction, of any nature, "In the vast majority of such cases the potential of the evidence for unfair prejudice clearly outweighs its probative value." *Davidson,* 351 N.W.2d at 11. The same may be said with even greater force of evidence of a prior conviction for a sex offense or "predatory offense."

Because of the stipulation made by the defense, the state was required to prove only that Wemyss knowingly failed to register his new address as of July 10, 2003. The state argues that the exhibits admitted were relevant to prove this element of the offense. Wemyss, however, argues that any evidence of past registrations and failures to register was irrelevant to that element and were rendered inadmissible by his stipulation. We disagree. "A defendant may not be allowed to unilaterally control the need for relevant evidence by offering to stipulate, especially where the evidence bears upon other issues not covered by the stipulation." *Matelski,* 622 N.W.2d at 832.

The predatory offender information forms contained responses that set forth the changes in Wemyss's addresses, places of employment, and vehicles. As the state argues, they are relevant to Wemyss's knowledge of his duty to register as a predatory offender and the manner in which he notified the BCA of changes in his address. *See* Minn. R. Evid. 401 1977 comm. cmt. ("The fact to be established need not be an ultimate fact or a vital fact. It need only be a fact that is of some consequence to the disposition of the litigation."). The state had the right to use all relevant evidence available to prove that Wemyss knowingly violated his responsibility to register as a predatory offender so long as that evidence did not undermine the stipulation. *See Davidson,* 351 N.W.2d at 11 (recognizing facts of prior conviction may be admissible if relevant to a disputed issue); Minn.Stat. § 243.166, subd. 5(a) (making it a crime to "knowingly violate" registration statute). Because the predatory offender information forms tended to prove Wemyss's knowledge of his duty to register, and, except for the captions discussed below, did not undermine the stipulation to Wemyss's prior conviction, the district court did not abuse its discretion in admitting the exhibits.

■ Wemyss next argues that the court's failure to redact the terms "predatory offender" and "sex offender" on the admitted exhibits was error, and along with the utterance of the same terms on

several occasions by the prosecutor, denied Wemyss's right to a fair trial. The district court denied Wemyss's request to redact the allegedly prejudicial terms in the exhibits and prohibit the state from using the terms because the issue at trial was whether Wemyss knowingly violated any of the statutory predatory offender registration requirements. Minn.Stat. § 243.166, subd. 5(a).

The term "predatory offender" is the term used in the statute to refer to those required to register. But Wemyss stipulated that he was required to register as a predatory offender to avoid the potential prejudice of the repeated references to him as a "predatory offender" or "sex offender" before the jury. Although the jury needed to be informed of this stipulation, use of the terminology "predatory offender" or "sex offender" tended to undermine the stipulation. In *Davidson,* the supreme court held that a defendant charged with possession of a handgun had a right to stipulate to his prior felony conviction, and that the court "should have instructed the jury to the effect that defendant had stipulated that under Minnesota law he was not entitled to possess a pistol...." 351 N.W.2d at 12. Similarly, in this case, the purpose of the stipulation was to keep from the jury Wemyss's prior conviction. Consequently, to label him a "predatory offender" or "sex offender" undermined that stipulation.

The state argues that the stipulation did not explicitly preclude it from referring to Wemyss as a predatory offender. But the issue is not the scope of the stipulation as agreed on by the parties, but rather the benefit of the stipulation to which Wemyss was entitled under *Davidson* and *Berkelman.* As we read the supreme court's holdings in *Davidson* and *Berkelman,* Wemyss was entitled to the benefit of the stipulation to avoid the potential prejudice

of those references of him before the jury. Because the references to Wemyss as a predatory offender were prejudicial and undermined the stipulation, we conclude that the district court abused its discretion in admitting the exhibits without redacting those references, and in allowing the prosecutor to refer to Wemyss as a "predatory offender" and a "sex offender."

■ Next, Wemyss argues that one of the responses on the SO Registration Form signed by him on March 15, 1996, violated the pretrial stipulation because it states the details of Wemyss's underlying conviction, sexual penetration with a 14–year–old neighborhood girl. Wemyss argues that he entered the stipulation to avoid testimony detailing the nature of his underlying conviction. We agree. The exhibit violated the stipulation by going into the details of his conviction and was not relevant to the element of the offense that Wemyss did not stipulate to—that he knowingly violated any of the statutory predatory-offender-registration requirements. And, Wemyss properly requested that the offending language be redacted. Consequently, we conclude that the district court abused its discretion by admitting the SO Registration Form without redacting the offending language.

■ Finally, based on our review of the record, we conclude that the district court also abused its discretion when it admitted the nine annual request forms for Wemyss to keep his registrations updated—which included five instances of annual request forms returned to the BCA undelivered or unanswered. The exhibits were not relevant to whether Wemyss knowingly failed to comply with all of the predatory registration requirements. Because these requests were returned to the BCA undelivered, it is unclear whether Wemyss even saw the requests. The requests also could have been returned to the BCA if Wemyss

unknowingly did not provide the BCA with an updated address on a timely basis, or if the mail was not delivered through no fault of Wemyss. None of these scenarios are relevant to the "knowledge" element the state was charged with proving at trial. Therefore, we conclude that these nine exhibits were irrelevant under Minn. R. Evid. 401 and should not have been admitted at trial by the district court.

## II.

*Harmless Error*

■■■ Wemyss argues that because the district court erred when it admitted the unredacted exhibits and other references to "predatory offender" and "sex offender," he is entitled to a new trial. But Wemyss's conviction need not be vacated if the district court's errors were harmless. "[A]ppellate courts must look to the basis on which the jury rested its verdict and determine what effect the error had on the actual verdict." *State v. Jones,* 556 N.W.2d 903, 910 (Minn.1996). "If the verdict actually rendered was surely unattributable to the error, the error is harmless beyond a reasonable doubt." *Id.* The inquiry is not whether the jury could have convicted the defendant without the error, but rather, what effect the error had on the jury's verdict, "and more specifically, whether the jury's verdict is 'surely unattributable' to [the error]." *State v. King,* 622 N.W.2d 800, 811 (Minn.2001) (quoting *State v. Juarez,* 572 N.W.2d 286, 292 (Minn.1997)).

■■■ In addition to the exhibits improperly admitted without redaction, the state presented testimony from the patrol officer, the Mounds View police officer, the police investigator, and the supervised-release agent. This testimony revealed that (1) Wemyss was registered at 435 University Avenue in Saint Paul but said that he

had been staying at 1003 Montclair "for weeks"; (2) Wemyss was found at 1003 Montclair; (3) Wemyss became belligerent once officers challenged him on his address; (4) Wemyss did not register the 1003 Montclair address with the police department before July 10, 2003; and (5) Wemyss appeared knowledgeable about the predatory offender registration requirements. Wemyss also presented evidence that he had attempted to orally report a new address in 2002 or 2003, strongly indicating that he knew of the registration requirement. Based on this record, we conclude that the jury had ample evidence to conclude beyond a reasonable doubt that Wemyss knowingly failed to register, and thus its verdict was surely unattributable to the error. Therefore, although the district court erroneously admitted evidence that undermined the stipulation, the error was harmless beyond a reasonable doubt.

## III.

Spreigl *Evidence*

■■■ Wemyss also argues that the state's exhibits were *Spreigl* evidence and improperly admitted by the district court. A district court may not receive evidence of other crimes and misconduct unless the state provides notice to the defendant. *State v. Spreigl,* 272 Minn. 488, 496–97, 139 N.W.2d 167, 172–73 (1965). We will not reverse the district court's admission of *Spreigl* evidence unless an abuse of discretion is clearly shown. *State v. Spaeth,* 552 N.W.2d 187, 193 (Minn.1996).

■■■ We disagree with Wemyss's argument that the exhibits were improper *Spreigl* evidence. First, we have already concluded that ten of the 29 exhibits were erroneously admitted into evidence, which makes a *Spreigl* analysis unnecessary as to those exhibits. Second, the procedural

*Spreigl* requirements only apply to other crimes and misconduct by the defendant. *Spreigl,* 272 Minn. at 496–97, 139 N.W.2d at 172–73. Here, the 19 exhibits that detail Wemyss's changes in address, employment, and vehicle ownership are not evidence of other crimes or misconduct. Instead, the exhibits are proof that Wemyss had knowledge of his legal obligation to register because he updated the BCA and local law enforcement agencies on his status. They do not show other failures to fulfill that obligation. Third, even if the 19 exhibits were instances of other crimes and misconduct, *Spreigl* would not apply because the other acts were inextricably intertwined with the charged offense. *See generally State v. Nunn,* 561 N.W.2d 902, 907–08 (Minn.1997). Fourth, Wemyss was given adequate notice of the exhibits, either through their written inclusion in the state's criminal complaint or at the pretrial hearing. Therefore, we conclude that Wemyss's *Spreigl* argument is without merit.

## IV.

*Sufficiency of the Evidence*

██ Wemyss finally argues that the state's evidence is insufficient to convict him of failure to register as a predatory offender. After examining the record, appellate courts must determine if the evidence, viewed in the light most favorable to the conviction, "was sufficient for the jurors to reach their verdict." *Matelski,* 622 N.W.2d at 830. We "must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary." *Id.* at 831.

Viewing the evidence in the light most favorable to the conviction, we conclude that there was ample evidence for the jury to find Wemyss guilty of failure to register as a predatory offender. At the time of the offense, the predatory-offender statute re-quired Wemyss to report the addresses of his primary and secondary residences. Minn.Stat. § 243.166, subd. 4a(b). Testimony at trial revealed that on July 10, 2003, a state patrol officer stopped a vehicle in which Wemyss was a passenger, and Wemyss told the officer that he was "living" or "staying" at 1003 Montclair, in Mounds View. A Mounds View police officer testified that he found Wemyss at 1003 Montclair and that Wemyss produced identification from a dresser drawer in the bedroom. After Wemyss produced the identification, he told the officers that he had been staying at 1003 Montclair "for weeks." A Mounds View police investigator testified, after reviewing department records, that Wemyss had not registered the 1003 Montclair address with the police department prior to July 10, 2003. Wemyss's supervised-release agent testified that, in his belief, Wemyss understood the predatory offender registration procedures. Finally, the state introduced a multitude of exhibits showing that Wemyss had timely registered as a predatory offender in the past. Given our deferential standard of review, we conclude that the evidence is sufficient to support the conviction.

## DECISION

Because we conclude that the district court's improper admission of evidence was harmless error, that Wemyss's *Spreigl* argument is without merit, and that the remaining evidence was sufficient to support the jury's verdict, we affirm Wemyss's conviction of failure to register as a predatory offender under Minn.Stat. § 243.166 (2002 & Supp.2003).

**Affirmed.**