*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1267**

State of Minnesota,
Respondent,

vs.

Marsenior Pede Johnson,
Appellant.

**Filed July 21, 2014
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CR-12-27751

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant argues that his convictions for attempted first-degree murder must be reversed because the circumstantial evidence failed to establish beyond a reasonable doubt that he intended to kill two police officers.  We affirm.

**FACTS**

On August 21, 2012, around 11:30 p.m., Officers Katherine Hammes and James Huber of the Minneapolis Park Police responded to a reported robbery at Minnehaha Parkway and Bryant Avenue.  The caller, subsequently identified as appellant Marsenior Johnson, had stated that he was beaten and robbed by two or three white men with knives and that he was hurt but declined ambulance assistance.

Officers Hammes and Huber arrived at the reported location in their squad car and saw Johnson crouching down at a footbridge that crossed Minnehaha Creek.  It did not appear to the officers that Johnson was injured.  The officers noticed personal items on the ground next to Johnson, and according to Officer Huber, Johnson appeared to be "adjusting things" or "moving things around."  After Officer Huber shined a spotlight on him, Johnson stood up and started walking "awfully fast" toward the squad car.  Officer Hammes reported that "Johnson approached the vehicle too quickly" and that this behavior "wasn't very comfortable" for the officers.

The officers exited the squad car, and Johnson walked toward them while claiming that he had been robbed and pointing east with his left hand.  Johnson's right hand was in his front pants pocket.  Officer Huber asked Johnson to show his right hand.  Johnson did

not comply. After a second command from Officer Huber to show his hand, Johnson continued "walking faster and faster and not saying anything to" Officer Huber. As Johnson got closer, Officer Huber put his hands up to stop him. Johnson then pulled a knife from his pants pocket and stabbed Officer Huber at least once in his left upper chest area. From her vantage point by the squad car, Officer Hammes "saw [Johnson] go at [her] partner" and made "two quick jabs to the chest," although she could not see whether Johnson had successfully stabbed Officer Huber. The knife penetrated Officer Huber's uniform and protective vest. Officer Huber did not feel the contact and was not injured.

Officer Huber shoved Johnson away, and Officer Hammes yelled Officer Huber's name. Officer Huber testified that "Johnson looked at [Officer Hammes] and charged [at] her" and was "[k]ind of a flaring – kind of waving his arms at her." Officer Hammes testified that Johnson then "came running at [her] with the knife in hand." With her gun drawn, and while walking backwards to distance herself from Johnson and to avoid shooting Officer Huber, Officer Hammes either fell or was knocked down, striking her head and losing consciousness.

Meanwhile, Officer Huber pulled his gun but did not fire immediately, fearing that a stray bullet could hit Officer Hammes. Officer Huber testified that Johnson "got on top of" Officer Hammes with his legs between her legs in "an attack position." Because of the darkness, Officer Huber could not see whether Johnson was stabbing Officer Hammes, but he saw Johnson holding the knife as he pulled his hand back. Then, according to Officer Huber, the lighting conditions allowed him to clearly see Johnson, so he fired three shots, striking Johnson twice. Johnson dropped the knife and collapsed

next to Officer Hammes. Officer Hammes testified that the sound of gunshots woke her up. Officer Huber handcuffed Johnson and called an ambulance. Johnson was treated for gunshot wounds to his face and lower stomach area; Officer Hammes was treated for a head wound and a puncture in her right shoulder blade area.

At trial, the jury was presented with photographic evidence of the punctures on the protective vests worn by Officers Huber and Hammes and evidence that the punctures were consistent with a stabbing. The jury also heard evidence of the injuries sustained by Officer Hammes during the incident.

In his defense, Johnson testified that he did not intend to kill the officers, but only wanted to get arrested. He explained that he was diagnosed with paranoid schizophrenia around 1996 and that he continues to be prescribed medication and treated by a psychiatrist. When he is not on medication, he has "a lot of like flare-ups as far as voices go" and would not remember all of his actions. Johnson admitted that he was a drug addict and used crack cocaine.

Johnson testified that he had instigated several incidents in the past so that he could get arrested. As an example, Johnson noted that in June 2011, after using crack cocaine, he knocked down some shelves at a CVS pharmacy and asked people to call the police. He stated, "My voices just coming in my head sometimes that believe like, yeah, you need to go to jail." Also, in July 2012, he kicked the door of an unmarked police car. He testified, "I was having a schizophrenia incident, what I call flare-ups. . . . Sometimes my voices just say, you need to be in jail. Go to jail. So instead of trying to hurt someone, I just kicked the door because I was already surrounded by cops or whatever."

4

Johnson testified that on another occasion he attempted to get incarcerated by going to a jail and asserting that there was a warrant out for his arrest. When it was discovered that a warrant did not exist, Johnson picked up a computer monitor and threw it off the desk.

Johnson testified that for approximately one week prior to the incident of August 21, 2012, he had used crack cocaine. On August 21, beginning around noon, Johnson used cocaine throughout the day and night in a room he had rented at a Minneapolis hotel. Around 11:00 p.m., after leaving the hotel to walk to a nearby supermarket, Johnson encountered three men, who robbed him, pushed him down, and threatened him with a pocket knife. Johnson testified that he was "feeling kind of crazy 'cause [he] had smoked all that dope." Inside the supermarket, Johnson stole two small, kitchen paring knives because he "was gonna try to get [his] money back." Johnson recalled only one memory regarding the time between when he left the supermarket and when he woke up in the hospital: "I do remember waking up saying somebody shot me in the face."

A jury found Johnson guilty of, among other offenses, attempted first-degree murder of Officers Huber and Hammes. *See* Minn. Stat. §§ 609.17, subd. 1 (attempt to commit a crime), .185, subd. (a)(4) (first-degree murder of a peace officer) (2012). The jury reconvened for phase two of the trial regarding Johnson's mental capacity at the time he committed the offenses. Johnson voluntarily withdrew his mental illness defense in exchange for the state's agreement to impose a concurrent presumptive guideline sentence for the attempted-murder convictions. The district court imposed concurrent sentences of 210 months' imprisonment. Johnson appeals.

**D E C I S I O N**

Johnson argues that the circumstantial evidence was insufficient to support his convictions of attempted first-degree murder. "To sustain a conviction, the state must prove all essential elements of the charged crime beyond a reasonable doubt." *State v. Papadakis*, 643 N.W.2d 349, 354 (Minn. App. 2002). Under Minn. Stat. § 609.17, subd. 1, "[w]hoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime." Minn. Stat. § 609.185, subd. (a)(4), provides that whoever "causes the death of a peace officer . . . , with intent to effect the death of that person or another, while the peace officer . . . is engaged in the performance of official duties" is guilty of first-degree murder.

Johnson does not dispute that stabbing the police officers with a knife constituted a substantial step toward killing the officers. But he argues that in doing so, he did not intend to kill them. The statutory phrase "with intent to" means "that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2012). Accordingly, to convict Johnson of attempted first-degree murder, the state had to prove that Johnson either had a purpose to kill Officers Huber and Hammes or believed that his actions, if successful, would kill the officers.

"A state of mind generally is proven circumstantially, by inference from words and acts of the actor both before and after the incident. A jury is permitted to infer that a person intends the natural and probable consequences of their actions." *State v. Johnson*,

6

616 N.W.2d 720, 726 (Minn. 2000) (citation omitted). We apply a two-step analysis when reviewing sufficiency-of-the-evidence challenges based on circumstantial evidence. "The first step is to identify the circumstances proved," and "[t]he second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Silvernail*, 831 N.W.2d 594, 598–99 (Minn. 2013) (quotations omitted).

Johnson contends that "undisputed is the fact that on three prior occasions [he] engaged in criminal acts solely to cause his arrest and incarceration." He argues, therefore, that "[t]he circumstantial evidence proved [is] consistent with an alternative rational hypothesis that [he] intended only to provoke the officers into arresting him." Johnson also argues that "the location, severity and number of wounds do not support an intent to kill." He contends, "[I]nstead of repeatedly stabbing [Officer] Huber or targeting areas unprotected by his vest, [he] halted the attack and began flailing his arms at Officer Hammes."

But, as an initial matter, Johnson misunderstands our standard of review. The inquiry is not based on all of the *circumstantial evidence* admitted at trial. Rather, we must identify the *circumstances proved* by construing evidence in the light most favorable to the verdict and assuming that the jury believed the state's witnesses and disbelieved the defense witnesses. *Id.* at 599. Accordingly, in evaluating the verdict and identifying the circumstances proved, we do not consider Johnson's testimony—disputed or not—that he had purposely committed crimes to be incarcerated. Moreover, in examining the record for reasonable inferences, we will not overturn a conviction "on the

7

basis of mere conjecture." *State v. Andersen*, 784 N.W.2d 320, 330 (Minn. 2010) (quotation omitted). Even if Johnson's testimony is considered, he did not recall his state of mind during the attack. So evidence of Johnson's state of mind for his past crimes of a different nature does not lead to a rational hypothesis of his state of mind for the crime at issue. The assertion that Johnson intended to only provoke the officers without killing them is mere conjecture.

Johnson's argument is also based on the mere conjectures that Johnson targeted only the areas of Officer Huber's body protected by the vest and that Johnson voluntarily halted the attack. Although "[i]ntent may be inferred from the manner of the killing," *State v. Cruz-Ramirez*, 771 N.W.2d 497, 509 (Minn. 2009), there is no evidence of Johnson's knowledge as to the protective vest's coverage. And the circumstances proved show that Officer Huber pushed Johnson away after being stabbed, that Johnson charged at Officer Hammes upon her calling of Officer Huber's name, and that Johnson finally stopped the attack only after being shot.

We are also not persuaded by Johnson's contention that the absence of repeated stabbing contradicts a finding of intent to kill. The supreme court has allowed intent to kill to be proved by circumstantial evidence that the victim "was stabbed once, with sufficient force." *State v. Andrews*, 388 N.W.2d 723, 728 (Minn. 1986). And we have held that a "single [gun]shot to the victim's torso, an area of the body containing vital organs, is sufficient to support a finding of intent to kill." *State v. Chuon*, 596 N.W.2d 267, 271 (Minn. App. 1999), *review denied* (Minn. Aug. 25, 1999).

Here, there was ample evidence of Johnson's intent to kill the officers, which included Johnson's preparatory acts of stealing a knife; hiding it in his pants pocket; refusing, twice, to take his hand out of his pocket; approaching the officers rapidly; and pulling the knife from his pocket before stabbing the officers. The state's evidence also proved that Johnson stabbed Officer Huber in the torso, an area of the body containing vital organs, with enough force to penetrate his protective vest; Johnson charged at Officer Hammes while flailing his arms with the knife in hand; after Officer Hammes ended up on the ground unconscious, Johnson was crouched over her in an attack position, making a pull-back motion with his hand that was holding the knife; Officer Hammes suffered a stab wound in her torso through her protective vest. The circumstances proved point to only one reasonable inference—that Johnson intended to kill the officers. Accordingly, we will not disturb the jury's verdicts convicting Johnson of attempted first-degree murder.

**Affirmed.**